IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:23-CR-35-TAV-JEM |
| | ) | |
| DANIELLE L. PRICE and | ) | |
| LARRY O. WALKER, II, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions are referred to the undersigned for disposition or recommendation as appropriate. *See* 28 U.S.C. § 636(b). This case is before the undersigned on motions by Defendants Danielle Price and Larry Walker to suppress evidence seized during the execution of a search warrant at a residence leased by Defendant Price [Docs. 36 & 52].

Defendants Price and Walker are charged, along with unnamed others, with conspiring to distribute fifty grams or more of methamphetamine, and forty grams or more of fentanyl from September 1, 2022, through March 7, 2023 (Count One) [Doc. 11 p. 1]. Defendants Price and Walker are also charged with possession of methamphetamine and fentanyl with intent to distribute (Count Two) and possession of firearms in furtherance of drug trafficking (Count Three), both allegedly occurring on March 7, 2023 [*Id*. at 1–2]. Defendant Walker is further charged with being a felon in possession of a firearm on that date (Count Four) [*Id*. at 2]

On March 7, 2023, law enforcement executed a search warrant at 1940 Old Callahan Drive in Knoxville, Tennessee ("the residence"), and seized controlled substances, packaging materials, firearms, ammunition, two hydraulic presses, and over $14,000 in currency. Defendants Price and Walker were arrested on the scene. The search warrant was issued based

upon the supporting affidavit of Detective Jeff Neely of the Knox County Sherriff's Office ("KCSO"). Defendants contend the search of the residence violated their Fourth Amendment rights because Detective Neely's affidavit fails to provide probable cause for issuance of the search warrant. Specifically, they allege that the affidavit does not establish a nexus between the residence and drug trafficking and that it contains a false statement and material omissions that are necessary to probable cause.

After reviewing the evidence, the arguments of the parties, and the relevant law, the undersigned recommends that the District Judge deny Defendants' motions. The undersigned finds the search warrant for the Old Callahan Drive residence was validly issued because the supporting affidavit provides a nexus between the residence and drug trafficking; that the Defendants fail to make a prima facia showing that the affiant knowingly or recklessly included false information or omitted material information from the affidavit, and thus, a *Franks* hearing is not warranted; and that officers executed the search warrant in good faith.

## I.     BACKGROUND AND EVIDENCE

On April 27, 2023, Defendant Price filed a Motion to Suppress and Incorporated Memorandum of Law [Doc. 36], attaching Detective Neely's affidavit in support of the search warrant for the residence [Doc. 36-1]. Defendant Walker seeks to adopt this motion [Doc. 49]. On June 30, 2023, Defendant Walker filed a Motion for Determination of Validity of Search Warrant Based on *Franks v. Delaware* [Doc. 52]. Defendant Walker attached rental records for three rental vehicles produced by Avis Budget Group pursuant to a subpoena [Doc. 52-2].

Defendant Price made an oral motion to join in the *Franks* motion. The Government responded in opposition to both motions [Docs. 44 & 54[1]].

The parties appeared before the undersigned on August 9, 2023, for a motion hearing. Assistant United States Attorney Brent Nelson Jones appeared on behalf of the Government. Assistant Federal Defender Benjamin G. Sharp represented Defendant Price. Attorney Gerald L. Gulley, Jr., represented Defendant Walker. Both Defendants were also present. The parties relied on the copy of the affidavit of Detective Neely attached to Defendant Price's motion [Doc. 36-1]. During the hearing, AUSA Jones asked to supplement the record with a spreadsheet of the Avis car rental records for Defendant Walker and Kenneth Roberts [Doc. 55 pp. 28–29]. The Government provided this spreadsheet as an attachment to its post-hearing response [Doc. 54-1].

Following oral argument on the motions, the Court permitted the parties to file post hearing briefs. On August 16, 2023, the Government filed a post-hearing brief and response to the *Franks* motion [Doc. 54]. Defendant Price filed a post-hearing brief on August 30, 2023 [Doc. 56]. Defendant Walker asked [Doc. 59] and was permitted [Doc. 61] to join in Defendant Price's post-hearing brief. On September 1, 2023, Defendant Walker filed a post-hearing brief on the *Franks* issue [Doc. 60]. The Government did not file a reply and the time for doing so has passed [*See* Doc. 58]. Upon receipt of all post-hearing filings, the Court took the matter under advisement.

---

[1]    Although it failed to respond to Defendant Walker's *Franks* motion by the July 14, 2023 deadline [*see* Doc. 51], the Government requested and was permitted to respond to the *Franks* motion after the suppression hearing. The Government filed its response on August 16, 2023 [Doc. 54], and attached a spreadsheet of the vehicle rental history of Defendant Walker and Kenneth Roberts [Doc. 54-1]. Defendants had no objection to the belated filing of this exhibit [Doc. 55 p. 29].

3

## II.    ANALYSIS

The Defendants challenge the search of a house on Old Callahan Drive pursuant to a search warrant arguing that it violated their rights under the Fourth Amendment, which protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. They identify three deficiencies with the affidavit: (1) it does not establish a nexus between the residence and the alleged criminal conduct, (2) a material, false statement was deliberately or recklessly included in the affidavit, and (3) information essential to probable cause was intentionally or recklessly omitted from the affidavit. The Government asserts that the affidavit properly supplies probable cause for the warrant's issuance, that Defendants fail to show a material, false statement or omission, and that even if the search warrant were lacking, the executing officers reasonably relied on the search warrant in good faith.

For the reasons set forth below, the undersigned finds the affidavit establishes a nexus between the residence and drug trafficking, that a *Franks* hearing is not warranted, and that the officers searched the residence in good faith reliance on the search warrant.[2]

---

[2]    No party addressed standing in their briefs or during argument. Yet, to successfully bring a Fourth Amendment claim, there must be a legitimate expectation of privacy in the place searched or the thing seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). "[S]tanding is 'an element' of a Fourth Amendment suppression claim" and a "defendant bears the 'burden' of showing he [or she] has standing." *United States v. Russell*, 26 F.4th 371, 375 (6th Cir.), *cert. denied*, 143 S. Ct. 385 (2022). The term "standing" has become "shorthand" for the requirement that a defendant must show that a search or seizure infringed upon his or her own rights. *Russell*, 26 F.4th at 374.

Here, based upon information contained in the affidavit, the undersigned finds that both Defendants have standing to challenge the search of the residence. Defendant Price is the lessee [Doc. 36-1 p. 2–3]. While Defendant Walker has no apparent formal proprietary interest in the residence, the undersigned finds that he is at least an overnight guest. Detective Neely states that Defendants Price and Walker purchased a house together in Monroe, Michigan [Doc. 36-1 p. 2], and the confidential informant reported that "at least three people" stayed at the residence in Knoxville [*Id.* at 3]. Law enforcement surveillance revealed that two rental vehicles, which appeared to belong at the house because the occupants could open the garage door remotely,

4

A.    **Nexus**

To satisfy the requirements of the Fourth Amendment, a search warrant must be based on an affidavit containing "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). "[P]robable cause is a flexible, common[-]sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief[] supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances related in the affidavit. *Gates*, 462 U.S. at 238.

An issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing [judge] is simply to make a

---

were found at the residence and were switched for other rental vehicles regularly [*Id.*]. Defendant Walker was one of two people renting the rental vehicles that frequented the residence [*Id.* at 4]. Further, the affidavit states that Defendant Walker "resides" at the residence [*Id.* at 7]. *See United States v. Heath*, 259 F.3d 522, 532–33 (6th Cir. 2001) (explaining that determining whether an overnight guest has a legitimate expectation of privacy in the host's home, a court examines the relationship with the homeowner or lessee and other indicia of "'acceptance into the household,'" such as having a key (citation omitted)).

practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed." *Id*. at 238–39. In reviewing the sufficiency of probable cause for a search warrant, the Court considers only the information that was before the issuing judge—that is, the information contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id*. (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595). Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id*. The Court must determine "'whether the [issuing judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Merriweather*, 728 F. App'x 498, 504 (6th Cir. 2018) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

Here, the nexus between the residence and drug trafficking comes primarily from law enforcement's surveillance of rental vehicles of the occupants leaving the residence, the driver engaging in a drug transaction, and the vehicle returning to the residence all within a brief time

[Doc. 36-1 pp. 3–5].[3] Officers had a report from a confidential informant (also characterized as a "Concerned Citizen [*id*. at 1])[4] that three people occupy the residence and use a white Dodge Ram pickup truck with Michigan registration and two rental vehicles that continually rotate [*Id*. at 3]. The informant reported that these vehicles "constantly leave the residence for very short periods of time" and, otherwise, "there is little to no traffic at the residence" [*Id*.]. This account is corroborated by police surveillance [*See id*.].

Detectives surveilling the residence confirm that "at least three vehicles" (one being the white pickup truck registered to Defendant Price) frequent the residence and "appear[] to belong there" because the drivers can open the garage door remotely [*Id*.]. Law enforcement also corroborates that aside from the truck, the other two vehicles are rental vehicles and "are switched out every few days, appearing to be constantly rotating" [*Id*.]. Officers additionally corroborate the informant's report that the vehicles make frequent short trips away from the

---

[3] The affidavit also reveals that the residence was also the last known location of an individual who died from an apparent drug overdose on or around September 22 to 23, 2022, approximately five months before the police surveillance at the residence [Doc. 36-1 pp. 2–3]. According to the affidavit, on September 23, 2022, police began an investigation of the apparent overdose death of a then unidentified individual ("the victim") from Monroe, Michigan, whose body was "dumped" at a property on Schaad Road in Knoxville [*Id*. at 2]. The victim told a friend that he was leaving on the morning of September 21, 2022, to work in Knoxville [*Id*.]. The victim's phone records reveal the victim left Monroe, Michigan, from 925 Donnalee Drive, the home of Defendants Price and Walker, and traveled to the residence at 1940 Old Callahan Road in Knoxville, which is leased by Defendant Price [*id*.] and where Defendants Price and Walker reside when in Knoxville [*id*. at 7]. The victim's phone records further showed that the victim called and received calls from Defendant Walker [*Id*. at 2]. The victim's credit card records showed several cash transfers to "Larry W." [*Id*. at 3]. And the victim last texted his father at 3:00 a.m., on September 22, 2023, stating that he "fell asleep at a friend's" [*Id*. at 2].

[4] At the motion hearing, counsel for Defendant Price argued that the affidavit is not clear on whether one or multiple confidential informants were involved in the investigation [Doc. 55 p. 9]. He points out that although the affidavit initially states it is based in part on "information from a Concerned Citizen," the section entitled "Confidential Informant" refers to confidential informants in the plural [*Id*.; *see* Doc. 36-1 pp. 1, 3]. While this discrepancy exists, it is without import because the undersigned finds that law enforcement's surveillance corroborates the observations, whether made by one or more individuals.

7

residence, observing that on February 28, 2023, one of the vehicles at the residence "left five times within a two-hour span," and the trips were fifteen to twenty minutes long [*Id*.]. Officers followed the vehicle on the fifth trip away from the house and observed what they believed was a drug transaction in the parking lot of Kroger, which is down the street from the residence [*Id*. at 3–4]. The affidavit states that the "target vehicle" left the residence, traveled to the Kroger parking lot, and parked next to a Nissan Juke [*Id*.]. The driver of the Juke exited and then entered the passenger door of the target vehicle, while a female passenger, known by the surveilling officers to have a history of narcotics violations and an outstanding warrant, remained in the Juke [*Id*. at 4]. The driver of the Juke then returned to his vehicle, and both cars left the parking lot [*Id*.]. When the officers attempted to stop the Juke at a nearby restaurant, it fled [*Id*.].

Officers observed a second drug transaction on March 7, 2023, when they followed a maroon Toyota Highlander with Florida tags ("Highlander") as it left the residence and traveled to a Food City [*Id*.]. The Highlander pulled up beside a Ford Focus, and the occupants of the vehicles spoke briefly before both vehicles traveled to a residential area [*Id*.]. Both vehicles stopped in the roadway, and officers "witnessed the female driver of the Focus go to the driver's side window of the Highlander and make a 'hand to hand' exchange" of suspected drugs [*Id*.]. Law enforcement followed both vehicles, and the Highlander returned directly to the residence [*Id*. at 4–5]. Other officers stopped the Focus, and the female driver admitted she had heroin, which the officers found she was arranging in "lines" on the screen of her cellphone to snort [*Id*. at 5]. The driver of the Focus "admit[ted] to purchasing [h]eroin from . . . Kenneth Roberts" [*Id*.]. Roberts was one of the renters of the rotating rental vehicles at the residence and was believed to stay at the residence [*Id*. at 4, 7].

The Defendants argue that an individual's status as a drug dealer is not sufficient to provide a nexus to search his or her residence [Doc. 36 p. 5; Doc. 56 p. 5]. They assert that, instead, a nexus must be based upon "reliable evidence," such as transactions at or near the residence, showing that the residence was used in drug trafficking [Doc. 56 p. 5]. They contend that no specific or concrete evidence ties 1940 Old Callahan Road to drug trafficking [*Id.*]. Rather, the one suspected transfer that law enforcement observed occurred away from the residence and involved a small amount of drugs (.5 grams) that could have been concealed in the vehicle [*Id.*].

Defendants are correct that a person's status as a drug trafficker alone is insufficient to provide a nexus to search his or her home. *Brown*, 828 F.3d at 383. In addition to showing that the defendant was trafficking drugs and stayed at the residence, the affidavit must provide "evidence showing a connection between [the] alleged drug trafficking and the . . . property." *United States v. Sumlin*, 956 F.3d 879, 887 (6th Cir. 2020)). "[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Brown*, 828 F.3d at 384. Sixth Circuit caselaw remains "unsettled" as to the amount of additional evidence of drug activity necessary for a nexus, but "[a]t a minimum, [courts] have required 'facts showing that the residence has been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence.'" *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *3 (6th Cir. Jan. 6, 2023) (quoting *Brown*, 828 F.3d at 383). Relying on *Grant*, 2023 WL 119399, at *7, Defendants argue that simply parking a rental vehicle at residence or making

short visits to a residence are not sufficient evidence that the residence is used in drug trafficking [Doc. 60 p. 2].

As an initial matter, the affidavit does not exclusively rely on the occupants' status as drug dealers as the basis for the search of the residence. The affidavit relates that based upon Detective Neely's training and experience, "[d]rug dealers very often will hide contraband, proceeds of drug sales and records of drug transactions in secure locations such as their own residences" [Doc. 36-1 p. 5]. This, however, is only one factor in the totality of the circumstances. Three and one-half pages of the affidavit describe law enforcement's investigation of the overdose death of an individual whose last known location was the residence and activity observed at and near the residence by a confidential informant and law enforcement [*Id*. at 1–5]. Moreover, the affidavit states that based upon his training and experience, the affiant knows that "[d]rug dealers often use . . . rental vehicles to transport and store illegal drugs" [*Id*. at 7]. Both the confidential informant and surveilling officers observed two rental vehicles at the residence and that the rental vehicles were constantly being exchanged for other rental vehicles [*Id*. at 3]. The occupants' frequent exchange of rental vehicles for other rental vehicles is a circumstance supporting an inference that the occupants of the residence were engaged in drug trafficking.

In addition, the affidavit describes the occupants of the residence making frequent and numerous short trips away from the residence. On two occasions, law enforcement followed the occupant's vehicle as it traveled directly from the residence and observed one suspected and one confirmed drug transaction. On the second occasion, officers followed the occupant's vehicle back to the residence after the drug transaction. This evidence of a "direct line" of travel from a residence to the site of a drug transaction as established by police surveillance can support a

10

nexus between a residence and drug trafficking. *United States v. Miller*, 850 F. App'x 370, 374 (6th Cir. 2021); *see also United States v. Houser*, 752 F. App'x 223, 225–26 (6th Cir. 2018) (finding a nexus when the defendant engaged in drug transaction on the side of his apartment building then returned directly to his apartment); *United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016) (finding surveilling officers twice observed defendant traveling directly from his apartment to a drug transaction and this gave rise to a "reasonable *inference*" that defendant was using the apartment for drug trafficking); *United States v. Gunther*, 266 F. App'x 415, 419 (6th Cir. 2008) (determining that police surveillance of defendant going to his residence before going to site of drug transaction "provided a neutral magistrate with a substantial basis to conclude that [d]efendant may have stopped at his residence to pick up some of his merchandise before meeting his customer at another location").[5]

The affidavit also relates that phone records from a deceased victim of an apparent drug overdose show the victim was at the residence within approximately thirty-five hours of his body being found "dumped" at another location with suspected fentanyl in his pocket [Doc. 36-1 p. 2].

In sum, the undersigned finds that the two drug transactions occurring directly after an occupant of the residence left the residence, supported by the phone records of the deceased

---

[5]     Observing that the quantum of evidence necessary to show a connection between a drug dealer's residence and drug trafficking remains uncertain, a panel of the Sixth Circuit found that the defendant's travel between an apartment and drug transactions on two occasions did not provide a nexus between the apartment and drug trafficking, where the affidavit failed to establish the defendant lived at the apartment and the officers did not see the defendant carry a bag from the apartment to his vehicle. *United States v. Sanders*, 59 F.4th 232, 240–42 (6th Cir. 2023), *vacated by* 68 F.4th 1030 (6th Cir. 2023). The Sixth Circuit subsequently granted a rehearing en banc in this case, which serves to vacate the previous decision. *United States v. Sanders*, 68 F.4th 1030 (6th Cir. 2023). In addition to no longer being controlling precedent, the vacated opinion in *Sanders* is distinguished from this case by the evidence that Defendants Price and Walker stayed at the residence, the connection between the residence and the victim of the overdose death, and the constant use of multiple rental vehicles by the occupants of the residence.

victim and the high number of rental vehicles used by the occupants of the residence, provide specific and concrete evidence connecting the residence to drug trafficking. *See Brown*, 828 F.3d at 382. But during oral argument, defense counsel cited numerous instances of pertinent information missing from the affidavit in relation to law enforcement's investigation of the overdose death,[6] the confidential informants,[7] and surveillance conducted by law enforcement[8] [Doc. 55 pp. 9–17]. "The affidavit[, however,] is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. As discussed, the totality of the information in the affidavit provides a substantial basis for the issuing judge to find that evidence of drug trafficking would be found at the residence.

---

[6]      In relation to the investigation of the overdose death, defense counsel argued that the affidavit fails to state when the investigating officers interviewed the deceased victim's father or a friend of the victim and the number, amounts, or dates of cash transfers from the victim to Larry W. [Doc. 55 pp. 7–8].

[7]      With regard to the confidential informants, defense counsel argued the affidavit does not identify whether the "concerned citizen" that appears at the beginning of the affidavit is the same as the confidential informants who are referenced later in the affidavit [Doc. 55 p. 9]; does not provide information on the credibility, reliability, or veracity of the confidential informants [*id*. at 10]; and it does not state that the confidential informants witnessed any illegal activity at the residence or were ever inside the residence [*id*.]. Defense counsel further argued that the affidavit relates that the confidential informant stated the occupants of the residence are from Detroit, Michigan, when the affiant previously stated the Defendants have a house in Monroe, Michigan [*id*. at 11].

[8]      Regarding surveillance and other investigation by law enforcement, defense counsel argued that the affidavit fails to state how long the officers surveilled the residence [Doc. 55 p. 11]; fails to identify the "cooperating agencies" or the technology that determined Defendant Price's truck made regular trips between Monroe, Michigan, and Knoxville [*id*. at 11–12]; fails to identify the drivers of the rental vehicles seen making short trips from the residence or involved in the alleged transactions on February 28 and March 7, 2023 [*id*. at 12–13, 16]; and fails to describe the actions that the alleged customers of the purported drug transactions took that were "consistent with preparation of narcotics" [*id*. at 13–14, 16]. Defense counsel further argued that the affidavit does not identify the female passenger of the Juke, whom officers recognized as having a history of narcotics violations and an outstanding warrant [*id*. at 14]; does not describe the target vehicle involved in the February 28, 2023 transaction or state where that vehicle went afterward [*id*.]; and fails to state when the female customer in the March 7, 2023 transaction purchased heroin from Kenneth Roberts [*id*. at 17].

12

## B.    *Franks* Hearing

Defendants argue that the affidavit of Detective Neely falsely states that Defendant Walker rented vehicles from Avis in Knoxville, which they allege was made in deliberate or reckless disregard for the truth [Doc. 52 p. 3]. Defendants also allege that the affidavit contains two material omissions: it provides no information on the credibility, veracity, or reliability of the confidential informants, and it gives no information that police surveillance resulted in observations connecting Defendant Walker (or Defendant Price) with the purported drug transactions on February 28, 2023, or March 7, 2023 [*Id*. at 3–4]. Defendants maintain that in the absence of the false statement and considering the material omissions, the affidavit lacks sufficient facts to establish probable cause for the issuance of a search warrant for the residence [Doc. 60 p. 2].

"In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). He "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks*, 438 U.S. at 171). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id*. (quoting *Franks*, 438 U.S. at 171). Indeed, an affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 U.S. at 171.

A material omission may also warrant a *Franks* hearing, but "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official

conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (citation omitted). This is because an affidavit need not include all facts gathered over the course of an investigation. *Id*. Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). A heightened standard is necessary for omissions to foreclose "'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Atkin*, 107 F.3d at 1217 (citation omitted).

Whether because of an alleged false statement or material omission, a defendant seeking a *Franks* hearing must make a substantial showing that the affiant intentionally or recklessly included or omitted it from the affidavit. *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). A statement in the affidavit "is only considered to be issued with 'reckless disregard for the truth' if the defendant shows the affiant subjectively 'entertained serious doubts as to the truth of his allegations.'" *Bateman*, 945 F.3d at 1008 (6th Cir. 2019) (cleaned up) (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). "'Allegations of an officer's

14

negligence or innocent mistake are insufficient.'" *Id.* (cleaned up) (quoting *Franks*, 438 U.S. at 171).

The "well-settled framework for *Franks* hearings requires a defendant to 'point to specific false statements,'" in the affidavit he claims are false or state the alleged omission. *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (cleaned up) (citation omitted). Here, Defendants argue that the following statement is false [Doc. 52 p. 3]: "Larry Walker consistently rents vehicles from Avis in Knoxville[.] . . . Avis confirmed that the vehicles at the target residence are rented to Kenneth Roberts and Larry Walker" [Doc. 36-1 p. 4]. They assert that documents subpoenaed from Avis show that only Kenneth Roberts rented vehicles from that business in Knoxville and Roberts is listed as the "only driver" [Doc. 52 p. 3]. At oral argument, counsel for Defendants stated that the spreadsheet of the vehicles rented by Walker and Kenneth Roberts supports their argument that none were rented by Walker in Knoxville [Doc. 55 p. 29; *see* Doc. 54-1 pp. 1–2]. Additionally, Defendants observe that only one vehicle rented by Defendant Walker in Michigan was returned to an Avis location in Knoxville and this vehicle was returned on March 8, 2023, the day after Defendant Walker's arrest [Doc. 56 p. 6; *see* Doc. 54 pp. 1–2]. They argue that the inclusion of this false statement invalidates the affidavit [Doc. 52 p. 1; Doc. 60 p. 1].

The Government concedes the statement that Defendant Walker rented vehicles from Avis in Knoxville is not accurate [Doc. 54 p. 2 ("After review of the evidence, it appears this sentence is inaccurate and should not have been included.")]. It argues that no indication exists that the affiant made an intentionally or deliberately false statement [*Id.*]. The Government points out that the affidavit contains the accurate make, model, and license plate number of the Toyota Highlander rented by Defendant Walker in Michigan and returned in Knoxville [*Id.* at 2–

3]. It asserts this information shows the affiant had no intention to mislead the issuing judge but, instead, negligently failed to include that Defendant Walker rented the vehicle in Michigan [*Id.* at 3]. The Government also asserts that the affidavit provides probable cause, even if the inaccurate statement is omitted [*Id.* at 3–4].

The undersigned agrees with the Government on both points. First, only the information that Defendant Walker's vehicle rentals occurred *in Knoxville* is false. All the other information regarding the rental vehicles—that Defendant Walker rented vehicles from Avis, that he drove them to the residence, that the rental vehicles were seen parked at the residence, and that Kenneth Roberts rented vehicles from Avis in Knoxville—is not contradicted by the exhibits provided by the parties [Doc. 52-2; Doc. 54-1]. Second, Defendant has presented no information that the phrase "in Knoxville" was deliberately or recklessly included by the affiant to mislead the issuing judge or that the affiant "entertained serious doubts as to the truth" of this statement. *See Bateman*, 945 F. 3d at 1008. Finally, that Defendant Walker rented vehicles from the Avis in Michigan, rather than the Avis in Knoxville, has little, if any, bearing upon probable cause given that rental vehicles were constantly at the residence and Defendant Walker rented some of them.

Defendants also allege that the absence of any information on the credibility, veracity, or reliability of the confidential informants is a material omission from the affidavit [Doc. 52 p. 3]. They fail, however, to demonstrate that this information was omitted to mislead the issuing judge because the addition of this information would only strengthen the affidavit. *See Mays*, 134 F.3d at 816 (providing a defendant seeking to demonstrate a material omission must make "a strong preliminary showing" that the affiant left out the information to mislead the issuing judge or the omitted material is essential to probable cause). Moreover, the absence of this information does not impact probable cause. Defendants are correct that when probable cause is based upon

16

information from a confidential source, the affiant must provide the issuing judge with a basis for finding that a confidential the source is reliable or credible and was positioned to know the information provided. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). But the absence of this information is not fatal to probable cause because independent police corroboration can also help shore up any deficiencies in reliability or basis of knowledge. *United States v. Johnson*, 514 F. App'x 533, 539 (6th Cir. 2013) ("[I]n the absence of any indicia of the informant['s] reliability, courts insist that the affidavit contain substantial independent police corroboration." (citation omitted)); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information." (citations omitted)). As discussed above, police surveillance and investigation corroborated the information from the confidential informant.

Finally, Defendants argue that the affidavit's failure to connect them with drug trafficking is a material omission [Doc. 52 p. 4]. As quoted by the Defendants [Doc. 56 p. 5], however, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). "[S]earch warrants (unlike arrest warrants) 'are directed at places, not people.'" *United States v. Bell*, No. 20-1884, 2022 WL 59619, at *4 (6th Cir. Jan. 6, 2022) (quoting *United States v. Miller*, 850 F. App'x 370, 374 (6th Cir. 2021)). Accordingly, the affidavit's failure to specify that Defendants Price and Walker were the individuals who engaged in the drug transactions on February 28 and March 7, 2023, is without import to a search of the

residence so long as the affidavit provides a nexus between drug trafficking and the residence. As discussed above, here it does.

In sum, the undersigned finds that Defendants have failed to carry their burden of showing the affidavit contains a deliberately or recklessly false statement or a material omission.

### C. Good Faith

"Under the good-faith exception, evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective' will not be suppressed." *United States v. Neal*, No. 2:22-cv-20083-JPM-1, 2023 WL 1107895, at *1 (W.D. Tenn. Jan. 30, 2023) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)); *see also United States v. Herring*, 555 U.S. 135, 141–42 (2009) (rejecting automatic exclusion of evidence and, instead, asking whether exclusion will provide "appreciable deterrence"). This is because "'[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.'" *United States v. White*, 874 F.3d 490, 505–06 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 921).

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. "'Some modicum of evidence, however slight[, ]between the criminal activity at issue and the place to be searched'" will support an officer's good-faith belief in the existence of probable cause. *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *White*, 874 F.3d at 496). Thus, only when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" will the search fall outside the good-faith exception and the evidence be suppressed. *Neal*, 2023 WL 1107895, at *1 (quoting *Leon*, 468 U.S. at 923).

18

Here, the undersigned does not find the warrant for the search of 1940 Old Callahan Road was defective. Nevertheless, given the evolving nature of the case law on nexus, the undersigned finds that even if the nexus between the residence and drug trafficking is considered insufficient, the evidence seized in the search of the residence should not be suppressed because the executing officers relied on the search warrant in good faith.

Detective Neely's seven-page affidavit provided the executing officers with evidence of a connection between the residence and drug trafficking. The geolocation records of the cellphone of the deceased victim of a drug overdose showed that the victim traveled from the Defendants' address in Monroe, Michigan, to the Knoxville residence leased by Defendant Price [Doc. 36-1 p. 2]. The victim told a friend he was traveling to Knoxville on the morning of September 21, 2023, and the victim texted his father on 3 a.m. on September 22 that he had fallen asleep at a friend's house [*Id*.]. The victim's body was found around thirty-five hours later, at 4:16 p.m. on September 23, 2022, with three grams of fentanyl in his shirt pocket [*Id*.]. The victim's cellphone records showed calls between the victim and Defendant Walker, and the victim's credit card records revealed that he made cash transfers to "Larry W." [*Id*. at 2–3].

Law enforcement surveillance of the residence corroborated information from a confidential informant that two rental vehicles were constantly at the residence and were exchanged frequently [*Id*. at 3]. The Avis rental company confirmed that the vehicles at the residence were rentals and were rented by Kenneth Roberts and Defendant Walker [*Id*. at 4]. Officers surveilling the residence confirmed the informant's statement that vehicles made frequent short trips away from the residence, and officers observed two hand-to-hand drug transactions by occupants of vehicles that traveled from the residence [*Id*. at 3–5]. Officers confronted the customer in the second drug transaction, and she admitted purchasing heroin from

Kenneth Roberts [*Id.* at 4-5]. Meanwhile, other officers followed the vehicle back to the residence [*Id.*].

These connections between drug activity and the residence solidly support the executing officers' good-faith reliance on the search warrant. *Accord Neal*, 2023 WL 1107895, at *1 (W.D. Tenn. Jan. 30, 2023) (affirming application of the good-faith exception when the affidavit demonstrated defendant lived at the residence, surveilling officers observed a hand-to-hand transaction away from the residence between a confidential informant and an individual the informant identified as the defendant, and the defendant's vehicle was registered to the residence). Thus, if the affidavit is found to be deficient in probable cause, the evidence seized in the execution of the search warrant should not be suppressed.

## III.    CONCLUSION

For the reasons discussed herein, the undersigned finds:

1. that both Defendants Price and Walker have standing to challenge the search of the residence;

2. that Detective Neely's affidavit provides probable cause to search the residence because it demonstrates a nexus between the residence and drug trafficking;

3. that there is no evidence that Detective Neely intentionally or recklessly included a false statement in the affidavit or made an omission that is material to probable cause; and

4. that law enforcement searched the residence in good faith reliance on the search warrant.

20

The undersigned therefore **RECOMMENDS** that the District Judge **GRANT** Defendant

Walker's Motion to Adopt the Motion to Suppress Filed by Co-defendant Danielle Price [**Doc.**

**49**] and **DENY** Defendants' motions [**Docs. 36 & 52**].[9]

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[9]     Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).