UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　No.:　3:23-cr-35-TAV-JEM
　　　　　　　　　　　　　　　　　　)
DANIELLE L. PRICE and　　　　　　　)
LARRY O. WALKER, II,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　)

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Jill E. McCook on October 3, 2023 [Doc. 66]. The R&R addresses defendant Price's Motion to Suppress and Incorporated Memorandum of Law ("Motion to Suppress") [Doc. 36] and defendant Walker's Motion for Determination of Validity of Search Warrant Based on *Franks v. Delaware* ("Motion for *Franks* Hearing") [Doc. 52].[1] The government responded [Doc. 44], and Judge McCook held a motion hearing on August 9, 2023 [Doc. 53]. Judge McCook then issued the R&R [Doc. 66], recommending that the Court grant defendant Walker's Motion to Adopt the Motion to Suppress Filed by Co-Defendant Danielle Price [Doc. 49] and deny the Motion to Suppress [Doc. 36] and Motion for *Franks* Hearing [Doc. 52].

---

[1] Defendant Walker seeks to adopt defendant Price's Motion to Suppress [Doc. 49]. Defendant Price made an oral motion to join defendant Walker's Motion for *Franks* Hearing [Doc. 55, p. 4].

Defendants have filed objections to the R&R [Docs. 67, 68],[2] the government has responded [Doc. 69], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendants' objections [Docs. 67, 68], **ACCEPT** and **ADOPT** the R&R [Doc. 66] in whole, and **GRANT** defendant Walker's Motion to Adopt the Motion to Suppress [Doc. 49] and **DENY** the Motion to Suppress [Doc. 36] and Motion for *Franks* Hearing [Doc. 52].

## I. Background

The Court presumes familiarity with the facts of this case. Moreover, the Court notes that the parties do not object to the background and evidence basis in the R&R, and therefore, the Court will adopt the following from the R&R [Doc. 66].

Defendants are charged, along with unnamed others, with conspiring to distribute 50 grams or more of methamphetamine, and 40 grams or more of fentanyl from September 1, 2022, through March 7, 2023 (Count One). Defendants are also charged with possession of methamphetamine and fentanyl with intent to distribute (Count Two) and possession of firearms in furtherance of drug trafficking (Count Three), both allegedly occurring on March 7, 2023. Defendant Walker is further charged with being a felon in possession of a firearm on that date (Count Four).

On March 7, 2023, law enforcement executed a search warrant at 1940 Old Callahan Drive in Knoxville, Tennessee ("the residence"), and seized controlled substances, packaging materials, firearms, ammunition, two hydraulic presses, and over $14,000 in

---

[2] Defendants each filed objections to the R&R and adopt and republish each other's objections [Doc. 67, p. 17; Doc 68, p. 7].

currency. Defendants were arrested on the scene. The search warrant was issued based upon the supporting affidavit of Detective Jeff Neely of the Knox County Sherriff's Office.

### A. The Motion to Suppress and Motion for *Franks* Hearing

In the Motion to Suppress, defendants argued that the affidavit failed to establish sufficient nexus such that there was probable cause to search the residence [Doc. 36, p. 5]. They initially argued that the affidavit contained no information or indication that criminal activity occurred at the residence [*Id.*]. In support, they pointed to Sixth Circuit caselaw establishing that a suspect's status as a drug dealer does not give rise to the inference that drugs would be found at the suspect's home without other reliable evidence demonstrating that the residence had been used in drug trafficking [*Id.*].

In their post-hearing briefs, defendants argued that there was no information regarding criminal activity at or near the residence, much less anything "specific and concrete" [Doc. 56, p. 5]. The only observed potential criminal activity, according to defendants, was a suspected hand-to-hand transfer of .5 grams of suspected narcotics, which was conducted away from the residence by an individual who was not charged in the indictment [*Id.*].[3] Additionally, they argued that such a small amount of drugs could have been stored or concealed in the vehicle [*Id.*]. Defendants also asserted that there was no observation of large quantities of drugs or large bags or packages being delivered to, removed from, or stored in the residence [*Id.*]. They further argued that parking a rental

---

[3] It appears that defendants were referring to Kenneth Roberts, who, in addition to defendants, was a target of the search warrant affidavit and was believed to stay at the residence [Doc. 36-1, p. 7].

3

vehicle at a residence or making short visits to a residence is insufficient evidence to establish that the residence is used in drug trafficking [Doc. 60, p. 2].

In the Motion for *Franks* Hearing, defendants argued that the affidavit contained false information and material omissions [Doc. 52, p. 1]. First, defendants argued, and the government conceded, that documents disclosed in discovery revealed that a statement in the affidavit under the heading "Rental Vehicles" was inaccurate [*Id.* at 3; Doc. 54, p. 2]. In particular, the affidavit states that a subpoena to Avis Car Rental "found the following: . . . Larry Walker consistently rents vehicles from Avis in Knoxville . . . Avis confirmed that the vehicles at the target residence . . . are rented to Kenneth Roberts and Larry Walker" [Doc. 52, p. 3 (citing 52-1, p. 5)]. The parties agreed that this statement was inaccurate, as only Kenneth Roberts, not defendant Walker, was named in the subpoena to Avis and responsive documents [Doc. 52, p. 3; Doc. 54, p. 2]. However, the government contended that the inclusion of such information was not made intentionally or with reckless disregard for the truth [Doc. 54, p. 2]. Additionally, the government also noted that the responsive documents show that defendant Walker nonetheless rented four vehicles in Michigan, with one of those rentals being returned in Knoxville [*Id.*]. In the alternative, the government argued that the affidavit contained sufficient probable cause even if the statement that defendant Walker rented vehicles from Avis in Knoxville was excluded [*Id.* at 3].

Next, defendants argued that the information in the affidavit concerning the confidential informant lacked sufficient detail such that the issuing judge could determine the credibility, veracity, or reliability of any such informant [Doc. 52, p. 3]. Finally, the

4

affidavit failed to mention or link defendants to suspected drug activity at the residence, which they contended is a material omission and, standing alone, does not signify that there was a reasonable probability that drugs would be found at the residence [*Id.* at 4].

## B. The R&R

In the R&R, the magistrate judge first analyzed the Motion to Suppress, considering the underlying affidavit [Doc. 66, Doc. 36-1]. After citing the relevant caselaw regarding nexus, she first determined that nexus between the residence and drug trafficking "comes primarily from law enforcement's surveillance of rental vehicles of the occupants leaving the residence, the driver engaging in a drug transaction, and the vehicle returning to the residence all within a brief time" [Doc. 66, pp. 6–7, 9]. She further noted that the affidavit reveals that the residence was the last known location of an individual who died from an apparent drug overdose in September 2022 [*Id.* at 7 n.3, 10]. According to the magistrate judge, the affidavit indicates that phone records from the deceased individual show that he "was at the residence within approximately thirty-five hours of his body being found 'dumped' at another location with suspected fentanyl in his pocket" [*Id.* at 11]. The individual's phone records also showed that he called and received calls from defendant Walker, and the individual's credit card records showed several cash transfers to "Larry W." [*Id.* at 7 n.3].

In addition, the magistrate judge highlighted the section in the affidavit concerning the confidential informant, who reported that "three people occupied the residence and use a white Dodge Ram pickup truck with Michigan registration and two rental vehicles that continually rotate" [*Id.* at 7, 10]. The confidential informant also reported that these

5

vehicles "constantly leave the residence for very short periods of time" and "there is little to no traffic at the residence" [*Id.*].

The magistrate judge concluded that the confidential informant report was corroborated by police surveillance [*Id.* 7–8]. She explained, "Detectives surveilling the residence confirm that 'at least three vehicles' (one being the white pickup truck registered to Defendant Price) frequent the residence and 'appear[ ] to belong there' because the drivers can open the garage door remotely" [*Id.* at 7]. Additionally, she noted that officers corroborated the allegation that "the vehicles make frequent short trips away from the residence, observing that on February 28, 2023, one of the vehicles at the residence 'left five times within a two-hour span,' and the trips were fifteen to twenty minutes long" [*Id.* 7–8]. On the fifth trip, officers followed the vehicle from the residence and observed what they believed was a drug transaction in the parking lot of Kroger [*Id.* at 8].

She further highlights that officers observed a second drug transaction occur on March 7, 2023, after they followed a vehicle from the residence and engage in a "'hand to hand' exchange" of suspected drugs with a female driver of a Ford Focus in a residential area [*Id.*]. "Law enforcement followed both vehicles, and the Highlander returned directly to the residence[,]" while other officers stopped the female driver of the Focus, who "admitted that she had heroin, which the officers found she was arranging in 'lines' on the screen of her cellphone" [*Id.*]. The magistrate judge also noted that the driver of the Focus admitted to purchasing heroin from Kenneth Roberts, one of the targets of the search warrant affidavit [*Id.*].

6

The magistrate judge then addressed defendants' arguments that there was no specific or concrete evidence linking the residence to drug trafficking, and that the only suspected drug transaction that was observed occurred away from the residence and involved a small amount of drugs (.5 grams), which could have been concealed in the vehicle [*Id.* at 9]. She determined that the affidavit contained evidence of a "'direct line' of travel from a residence to the site of a drug transaction as established by police surveillance can support a nexus between a residence and drug trafficking" [*Id.* at 10–11 (collecting cases)]. Altogether, she concluded that the "two drug transactions occurring directly after an occupant of the residence left the residence, supported by the phone records of the deceased victim and the high number of rental vehicles used by the occupants of the residence, provide specific and concrete evidence connecting the residence to drug trafficking" [*Id.* at 11–12]. Finally, the magistrate judge addressed what defendants argued was pertinent information missing from the affidavit by noting that the affidavit is to be judged in its totality and not based on what it lacks [*Id.* at 12].

In the alternative, "given the evolving nature of the case law on nexus," the magistrate judge found that, even if the nexus between the residence and drug trafficking was insufficient to establish probable cause, the evidence seized should not be suppressed because the executing officers relied on the search warrant in good faith [*Id.* at 19]. In support, she recited the same facts that were relevant to her probable cause determination, which "solidly support the executing officers' good-faith reliance on the search warrant" [*Id.* at 19–20].

As to the Motion for *Franks* Hearing, the magistrate judge noted the government's concession that the statement that defendant Walker rented vehicles from Avis in Knoxville is not accurate [*Id.* at 15]. However, she ultimately agreed with the government's position that the affiant did not include the statement deliberately or recklessly, as she concluded that defendants failed to present evidence to support such a finding [*Id.* at 15–16]. She further found that the statement "has little, if any, bearing on probable cause given that rental vehicles were constantly at the residence and Defendant Walker rented some of them" [*Id.* at 16].

As to defendants' argument about the credibility, veracity, or reliability of the confidential informant report, the magistrate judge determined that they failed to demonstrate that such detail was omitted from the affidavit to mislead the issuing judge [*Id.*]. She further concluded that the absence of such information did not impact probable cause in light of the independent surveillance that law enforcement conducted [*Id.*]. Finally, the magistrate judge addressed defendants' argument about the affidavit's failure to connect them with drug trafficking [*Id.* at 17]. Based on Sixth Circuit caselaw, which establishes that search warrants are directed at places, not people, the magistrate judge concluded that the affidavit's failure to specify that defendants were engaged in the suspected drug transactions is without import, as she determined that a nexus existed between drug trafficking and the residence [*Id.* at 17–18].

In light of the forgoing, the magistrate judge recommends that the Court dismiss the Motion to Suppress and Motion for *Franks* Hearing.

## II.     Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendants have objected.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  Accordingly, the Court considers the R&R, the Motion to Suppress, the Motion for *Franks* Hearing, the parties' underlying and supporting briefs, the defendants' objections, and the government's response to those objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute.").  Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review will obtain a different result on that particular issue.  *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  A general objection, or one that merely restates arguments previously presented and addressed by the magistrate judge, does not sufficiently identify alleged errors in a report and recommendation.  *See id.*

## III.     Analysis

Defendants raise three objections to the R&R.  Specifically, they object to the magistrate judge's findings that: (1) the affidavit provided probable cause to search the residence; (2) the search of the residence was made in good faith reliance on the search warrant; and (3) defendants failed to established that Detective Neely deliberately or

recklessly included false statements in the search warrant affidavit that were critical to a finding of probable cause [Docs. 67, 68].

## A.    Nexus Between Things to Be Seized and Place to Be Searched

An affidavit in support of a search warrant "must contain facts that demonstrate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'"  *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *2 (6th Cir. Jan. 6, 2023) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).   The connection—or "nexus"—"between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'"  *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004).  "If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant."  *Id.* (citing *Carpenter*, 360 F.3d at 595).

### 1.    "Direct Line" of Travel

Defendants first object to the magistrate judge's finding that nexus is primarily based on "law enforcement's surveillance of rental vehicles of the occupants leaving the residence, the driver engaging in a drug transaction, and the vehicle returning to the residence all within a brief time" [Doc. 67, p. 5 (citing Doc. 66, pp. 6–7)].  In particular, defendants attempt to distinguish the cases on which the magistrate judge relies for the assertion that "[t]his evidence of a "direct line" of travel from a residence to the site of a drug transaction as established by police surveillance can support a nexus between a

residence and drug trafficking" [Doc. 67, pp. 5–9 (citing Doc. 66, pp. 10–11)].  Unlike the cases cited by the magistrate judge, defendants primarily argue that the affidavit in this case does not indicate that there were any controlled buys or firsthand accounts of drug distribution by a confidential informant or law enforcement [*Id.* at 8, 15].

The Court initially notes that because probable cause involves a totality of the circumstances inquiry, the cases cited by both the magistrate judge and defendants can be analogized and distinguished in relevant ways.  Indeed, "[i]t is important to bear in mind that "[t]here are so many variables in the probable-cause equation that one determination will seldom be a useful 'precedent' for another."  *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 n.11 (1983)).  "Thus, with only a little effort one may locate cases upholding searches in which the supporting affidavit's connection of the person suspected of a crime with the evidence sought and the place to be searched is skeletal."  *Id.* at 298–99.  This is especially true with a crime like drug dealing and the nexus between alleged drug trafficking activity and a particular residence.  *United States v. Reed*, 993 F.3d 441, 448 (6th Cir. 2021), cert. denied, 142 S. Ct. 289 (2021).

With this in mind, the cases to which the magistrate judge cites, though distinguishable, nonetheless support her finding that the kind of evidence in this case, specifically the "'direct line' of travel from a residence to the site of a drug transaction . . . *can* support a nexus" [Doc. 66, pp. 10–11] (emphasis added).  Upon the Court's review of those cases where drug transactions occur beyond the immediate vicinity of the residence, courts emphasize a "direct line" of travel from the residence to the site of

11

the drug transaction as established by police surveillance, which is present in this case. *See, e.g.*, *United States v. Miller*, 850 F. App'x 370, 374 (6th Cir. 2021); *United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016); *United States v. Gunther*, 266 F. App'x 415, 419 (6th Cir. 2008); *see also United States v. Houser*, 752 F. App'x 223, 225–26 (6th Cir. 2018); *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009). Those cases likewise suggest that there is no per se rule that criminal activity must be observed at or near the residence to give rise to a nexus. *See id.* Indeed, the Sixth Circuit has recognized that "[d]rug dealers cannot immunize themselves from [a] search of a residence used to store their supply simply by ensuring that all drug deals take place in parking lots." *Miller*, 850 F. App'x at 374 (quoting *Jenkins*, 743 F. App'x. 636).

A "direct line" of travel as established by police surveillance exists in this case. On March 7, 2023, law enforcement observed a maroon Toyota Highlander leave the residence, stop in a residential area, and "make a 'hand to hand' exchange" with a female driver of a Ford Focus [Doc. 36-1, p. 4]. Officers then followed the Highlander directly back to the residence, while the female driver of the Focus was observed performing actions in her lap consistent with prepping narcotics for use [*Id.* at 4–5]. Officers made contact with the woman, who admitted that heroin was in her vehicle [*Id.* at 5]. Upon a search of her vehicle, officers found that she was preparing lines of heroin on her phone, as well as .5 grams of a substance believed to be heroin [*Id.*]. She also admitted to purchasing heroin from Kenneth Roberts, a target of the search warrant who rented vehicles from Avis in Knoxville and whose rentals were confirmed at the target location [*Id.* at 4–5].

12

Relatedly, the Sixth Circuit has recognized that nexus may exist between a residence, an individual, and suspected contraband based on a single controlled buy or suspected drug transaction when an individual was seen exiting a building immediately before undertaking a drug deal. *See Grant*, 2023 WL 119399, at *3 (collecting cases). Even though there were no controlled buys described in the affidavit in this case, contrary to defendants' position, evidence of controlled buys is not the only means through which nexus may be established. *See United States v. Hill*, No. 1:20-CR-12, 2021 WL 1305381, at *6 (S.D. Ohio Apr. 7, 2021); *see also United States v. Ellison*, 632 F.3d 347, 348 (6th Cir. 2011)). Further, upon reading the affidavit "reasonably" and "employing a healthy dose of common sense," the facts described in the affidavit and recited above regarding the observed hand-to-hand exchange on March 7, 2023, contradict defendants' argument that there were no firsthand accounts of drug distribution [Doc. 67, p. 15]. *See United States v. White*, 874 F.3d 490, 502 (6th Cir. 2017).

The Court finds the Sixth Circuit's decision in *Ellison* to be instructive. In *Ellison*, a reliable informant observed two individuals complete a drug transaction outside of the target home. 632 F.3d at 348. According to the affidavit, the informant saw an individual exit the home, provide the buyer with a "large quantity of cocaine in a plastic bag," and return inside the residence. *Id.* Despite no mention in the affidavit of any controlled buys, the court determined that the "[c]ommission of [one] drug transaction outside of a house and one participant's walking back into the house . . . plainly demonstrated a sufficient nexus with the house." *Id.* at 349. The suspected drug transaction that occurred on March 7, 2023, is similar to the facts in *Ellison*. Here, surveilling officers watched the Highlander

13

leave the residence, drive beyond the immediate environs, engage in what was believed to be a hand-to-hand exchange, and return directly to the residence [Doc. 36-1, pp. 4–5]. Even though the suspected transaction occurred away from the residence, the Court finds it of little import given the observed "direct line" of travel by law enforcement. *See Grant*, 2023 WL 119399, at *3; *Miller*, 850 F. App'x at 374.[4]

Further, "[w]hen it comes to probable cause, 'the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 60–61 (2018)). As the magistrate judge found, the affidavit contains additional facts, each of varying degrees of weight, beyond the suspected drug transaction on March 7, 2023 [Doc. 66, pp. 6–11]. For instance, it initially describes the triggering event: the investigation into the overdose death of an individual who was connected to defendants and the residence before his death [Doc. 36-1, pp. 1–3]. The individual's body had been "dumped" and was recovered with a bag of three grams of suspected fentanyl [*Id.* at 2]. The individual's credit card records show that he made several cash transfers to a recipient named "Larry W." [*Id.* at 3].

---

[4] Defendants also insinuate that the affidavit was defective because it did not confirm the identification of the person conducting the two suspected drug transactions [Doc. 67, p. 7]. However, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). As a result, the affidavit's failure to specify that defendants were involved in the suspected drug transactions is not the pertinent question in determining whether there is a nexus. *See id.*

Additionally, officers observed the frequent changing out of rental vehicles for others, which were rented by defendant Walker and Kenneth Roberts and seen making frequent, short trips departing and returning to the residence [*Id.* at 3–4]. On February 28, 2023, officers watched a target vehicle leave the residence 5 times within 2 hours, leaving and returning within 15 to 20 minutes each time [*Id.* at 3]. The fifth time, officers followed the target vehicle to a nearby Kroger, where it pulled beside a Nissan Juke occupied by a male driver and female passenger [*Id.* at 3–4]. Officers observed the male driver of the Juke enter and exit the target vehicle and return to the Juke; he was then observed performing actions in his lap that were consistent with preparing narcotics for use before fleeing the scene [*Id.* at 3]. The affidavit further notes that the female occupant of the Juke had a history of narcotics violations and an outstanding warrant [*Id.*]. Based on Detective Neely's training and experience, he knows that "[d]rug dealers often use . . . rental vehicles to transport and store illegal drugs" [Doc. 36-1, p. 7]. In light of the above, and in particular, the observed traffic of the three vehicles belonging to defendants and Kenneth Roberts at the residence, together with the incident on February 28, 2023, and the hand-to-hand exchange on March 7, 2023, give rise to the reasonable inference that suspicious activity was taking place at the residence. *Cf. Brown*, 828 F.3d at 382 (finding nexus was not established where the affidavit contained no evidence of suspicious activity at the residence and officers did not conduct any surveillance of the residence). As a result, the issuing judge could infer there was a fair probability that drugs were stored in the residence or that drug trafficking was taking place from the residence such that a search of the residence would likely yield contraband or evidence of a crime.

15

Further, and in light of the other facts in the affidavit, the Court is not convinced of the argument that nexus requires that officers observe the occupants of the residence carrying drugs or packages that potentially contain drugs into or out of the residence [Doc. 67, pp. 6–8]. The Court is required to consider the affidavit holistically at what it does show instead of focusing on what it does not or the flaws of each individual component of the affidavit. *See Christian*, 925 F.3d at 312. Additionally, similar arguments were made before the magistrate judge. Defendants previously argued that no specific or concrete evidence in the affidavit tied the residence to drug trafficking activities or that any illegal activity took place at or near the residence [Doc. 56, p. 5]. In particular, law enforcement did not observe large quantities of drugs or packages potentially containing drugs being delivered to, stored in, or removed from the residence. Instead, the one suspected drug transaction that was observed occurred away from the residence and involved a small amount of drugs (.5 grams), which defendants contend could have been concealed in the target vehicle [*Id.*].[5] To the extent that defendants attempt to reargue these issues in distinguishing the cases on which the magistrate judge relied, their objections are considered general objections that do not sufficiently identify alleged errors in the R&R.

---

[5] In distinguishing the cases on which the magistrate judge relies, the Court notes defendants' attempt to rehash many of the same arguments that were previously before and considered by the magistrate judge. For instance, defendants reargue that "there was no evidence of any illegal happenings occurring *at or near* the residence in question" [Doc. 67, p. 8] (emphasis added). They further attempt to reargue that "there was no indication whether [Kenneth Roberts] retrieved alleged narcotics from the residence as opposed to storing the substance in his vehicle, which based on the very small user amount of drugs could have been easily stored and concealed in the vehicle [*Id.* at 9]. And, they again raise the fact that surveilling officers did not observe packages being delivered or unloaded from the residence into the vehicles [*Id.* at 7].

16

*See Howard*, 932 F.2d at 509. The district court does not need to provide *de novo* review where objections to a report and recommendation are general. *See Mira*, 806 F.2d at 637.

In light of the above, defendants' objections are **OVERRULED**.

### 2. Reliability of the Confidential Informant

Defendants next argue that the information provided by the confidential informant was not sufficiently corroborated because there were no controlled buys and no information from the informant that drugs were being sold from the residence [Doc. 67, pp. 9–10]. In support, defendants cite to two cases in which corroboration was established through controlled buys [*Id.* (citing *United States v. Coffee*, 434 F.3d 887, 891 (6th Cir. 2006); *Gunther*, 266 F. App'x at 417)].

If probable cause to issue a search warrant is gained from information provided by a confidential source, the issuing judge must have a basis for finding that the source is reliable or credible and was in a position to know the information provided. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009); *see also Gates*, 462 U.S. at 233 (holding that a confidential informant's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"). An informant's veracity or reliability and basis of knowledge are not rigid categories. *Id.* Instead, deficiencies in one aspect can be made up by a strong showing in the other. *Gates*, 462 U.S. at 232–33. "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (citations omitted).

17

Here, the magistrate judge specifically explained each of the facts in the confidential informant's report that she determined were corroborated through independent law enforcement surveillance [Doc. 66, pp. 7–8]. In particular, surveilling officers corroborated the confidential informant's report that three vehicles, including defendant Price's white pickup truck, frequented the residence "and appear[] to belong there" because the drivers can open the garage door remotely [*Id.* at 7]. Additionally, officers confirmed that aside from the truck, two other vehicles are rental vehicles and "constantly switched out every few days, appearing to be constantly rotating" [*Id.*]. Further, it was confirmed that the vehicles make frequent and short trips away from the residence [*Id.* at 7–8]. Altogether, the magistrate judge determined that officer's independent surveillance efforts sufficiently corroborated the confidential informant's report.

Defendants do not object to the forgoing but instead take the position that a controlled buy was necessary or that the informant observed drugs being sold from the residence [Doc. 67, pp. 9–10]. However, a controlled buy is not always required to sufficiently corroborate information provided by a confidential informant. *See United States v. Hines*, 885 F.3d 919, 925 (6th Cir. 2018) (explaining that Sixth Circuit "precedent does not require independent corroboration of criminal activity" through a controlled buy or observation of drugs in the house); *Gunther*, 266 F. App'x at 417 (explaining that independent corroboration may be established by a police monitored controlled purchase). Independent police surveillance can suffice. *See Hines*, 885 F.3d at 925. Indeed, "[c]orroboration of specific nonobvious information that, although innocent on its own, meshes with an informant's tips is similarly relevant." *Id.* (collecting cases). Here, as the

18

magistrate judge properly concluded, independent police surveillance confirmed the details about the vehicle traffic at the residence, as well as the switching of rental cars, which was sufficient to corroborate the information provided by the confidential informant such that a controlled buy was unnecessary. As a result, this objection is **OVERRULED**.

### B. Good Faith Exception

Defendants next object to the magistrate judge's conclusion that, even if probable cause was lacking, the good faith exception to the exclusionary rule would apply [Doc. 67, p. 10; Doc. 68, pp. 6–7].

Under the good faith exception to the exclusionary rule, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). The Court thus must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *Id.* at 923 n.23. The good faith exception does not apply in four situations:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 922–23 n.23).

19

Under the third limitation, evidence may not be admitted at trial if it was seized under a warrant that was issued on the basis of a "bare bones" affidavit; that is, an affidavit that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* at 525–26 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). The Sixth Circuit has found the good faith exception applicable in cases where the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched. *Id.* at 526. If the reviewing court is "able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and official reliance on it is reasonable. *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005). For the good faith exception to apply, "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable." *Leon*, 468 U.S. at 922.

Defendants argue that the affidavit in this case is "bare bones" [Doc. 67, p. 13]. "[W]hen stripped down to its basics," they contend that the affidavit includes only the following evidence to suggest that drug trafficking would be found at the residence: (1) an individual died from a drug overdose more than five months earlier and cellphone GPS location data revealed that the individual was near properties connected to defendant Price; (2) a concerned citizen relayed information about the switching of rental cars; (3) two short periods of officer surveillance where vehicles were observed leaving the property and returning within 15 to 20 minutes; and (4) a suspected hand-to-hand drug transaction

20

involving a vehicle that officers observed leave and return to the residence [Doc. 67, pp. 13–14]. Defendants argue that none of this evidence is probative because all well-trained officers are presumed to know that a "a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship" necessary to a finding of probable cause" [*Id.* at 14 (citing *Savoca*, 761 F.2d at 297)].

They proceed to analogize the facts of this case with others in which the good faith exception did not apply. First, they cite to *McPhearson*, where the affidavit was deemed "bare bones" because the only connection between the residence and drug trafficking was that police had arrested the defendant at his residence and found crack cocaine in his pocket in a search incident to arrest [*Id.* at 16–17; Doc. 68, p. 6]. 469 F.3d at 526. Defendants then argue that in other cases, "[t]he application of the good faith exception . . . depended on the fact that each of the defendants were known to have participated previously in the type of criminal activity that the police were investigating" [Doc. 67, p. 16; Doc. 68, p. 6]. Specifically, they distinguish other cases in which there was "significant, probative evidence of the defendants' criminal schemes" from the instant case in which there were only "suspected purchases outside the residence" [*Id.*].

They also cite to *United States v. Jimenez*, No. 2:19-cr-11 (E.D. Tenn. Apr. 5, 2019), where law enforcement received a complaint of possible narcotics traffic at the target residence [Doc. 67, p. 17]. In that case, surveilling officers stopped two individuals in vehicles who left the residence and recovered approximately 15 grams of suspected methamphetamine. *Id* at 2–3. In determining the good faith exception did not apply, the court highlighted that the affidavit contained no facts drawing any connection between the

21

two individuals who were found with narcotics and the residence. *Id.* at 9. The court opined that the facts of *McPhearson* were even more suggestive of a connection between drug activity and the residence. *Id.*

Finally, they cite to *United States v. Ward*, 967 F.3d 550 (6th Cir. 2020) [Doc. 68, p 6]. In *Ward*, the court noted that the affidavit contained the following facts: (1) police discovered an undated text message indicating that the defendant sold an overdose victim heroin and crack-cocaine sometime before the individual's death; (2) five months after the overdose death, police discovered in the defendant's trash "loose marihuana, cigar wrappers," and a plastic bag containing residue of an unidentified, purportedly illicit substance, and two unidentified males were seen around the defendant's home; and (3) the defendant was previously charged with drug and weapons offenses. *Id.* at 554. The court did not give weight to the fact that two unidentified males were seen at the defendant's home since the government did not address it, or that the defendant was charged with drug and weapons offenses because the charges were undated. *Id.* at 554–55. As to the trash pull, the court reasoned that it "perhaps" would be different if officers conducted the trash pull earlier, or they searched the trash more than once. *Id.* at 556.

As an initial matter, the Court does not consider the evidence cited by defendants as merely demonstrating their presence at the residence, which in turn provided the basis for probable cause [*Id.* at 14]. Rather, defendants cite to specific and concrete facts in the affidavit, each of which lend varying degrees of support to a finding that at least a minimal connection exists between the residence and suspected drug trafficking activity such that a reasonably well-trained executing officer would not have reason to believe that the search

22

was illegal. *See United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019). Additionally, there is no evidence in the record that officers did not rely on this warrant in good faith or that they applied for the warrant knowing the information within it was false. *See United States v. Fitzgerald*, 754 F. App'x 351, 363 (6th Cir. 2018).

Further, the facts to which defendants point are more than just mere suspicions or conclusions, making this case distinguishable from *McPhearson*, *Jimenez*, and *Ward*. Like *Ward*, the triggering event was the investigation into the overdose death directly connecting the deceased, who was found with approximately three grams suspected fentanyl, to defendants and the residence through geolocation data and phone and credit card records [Doc. 36-1, pp. 1–3]. *See* 967 F.3d at 554. However, the affidavit further details observed frequent traffic of three vehicles at the residence, two of which were rentals belonging to Kenneth Roberts and defendant Walker that were constantly being switched out, and a white pickup truck that belonged to defendant Price [*Id.* at 3–4]. All three vehicles appeared to belong at the residence because they all could open the garage door from inside the vehicles [*Id.* at 3]. Thus, unlike the individuals found with narcotics in *Jimenez*, officers in this case had specifically connected defendants and Kenneth Roberts to the residence. *See* No. 2:19-cr-11, at 9. Plus, the driver of the Focus admitted that she bought heroin from Kenneth Roberts [*Id.* at 5].

Additionally, the vehicles were observed leaving and returning to the residence for short periods of time. On February 28, 2023, officers observed the target vehicle leave the residence 5 times within a 2-hour span for periods of 15 to 20 minutes [*Id.* at 3]. And on March 7, 2023, they observed the Highlander depart the residence, engage in a "hand to

hand" exchange with a driver of the Focus (who was found with heroin and admitted that she purchased heroin from Kenneth Roberts), and immediately return to the residence [*Id.* at 4]. Unlike *Jimenez*, *McPhearson*, and *Ward*, here there was a "direct line" of travel from the immediate vicinity of the residence to the site of a drug transaction and back as established by law enforcement. *See supra* Section III.A.1. Additionally, between independent officer surveillance and the confidential informant report, quantitatively there is more evidence here than the single trash pull in *Ward*. *See* 967 F.3d at 556. These are all are facts, not conjecture, suspicions, or unsupported conclusions that at the very least minimally tie the residence to drug trafficking activity such that a reasonably executing officer would not have reason to believe the affidavit was invalid. *See White*, 874 F.3d at 497.

Defendants then spend three paragraphs asking the Court to consider what was absent from the affidavit [Doc. 67, pp. 14–15].[6] However, the Court is to assess an affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *See United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). They additionally argue that unlike the cases cited by the magistrate judge, this case had no controlled buys or firsthand accounts of drug distribution by a confidential informant or officers [*Id.* at 15]. As previously discussed, however, a controlled buy is not necessary to support a finding of nexus. *See supra* Section III.A.1. As to the latter assertion about

---

[6] The magistrate judge also addressed arguments by defendants about the information they discerned was missing from the affidavit [Doc. 66, p. 12 nn.6–8]

firsthand accounts of drug distribution, the affidavit suggests otherwise in detailing the hand-to-hand exchange that occurred on March 7, 2023.  *See id.*

In light of the above, defendants' objection on this ground is **OVERRULED.**

## C.    *Franks* **Hearing**

Finally, defendants object to the magistrate judge's finding that defendants failed to make a *prima facia* showing that Detective Neely knowingly or recklessly included false information or omitted material information from the affidavit such that a *Franks* hearing is not warranted [Doc. 68, pp. 3–5].

Under the *Franks* test, the defendant must (1) make a substantial preliminary showing that specified portions of the affiant's statements are deliberately or recklessly false, and (2) demonstrate that the challenged statements are necessary to a finding of probable cause.  *Franks*, 438 U.S. at 171; *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001).  In order to mandate a hearing on this issue, "the challenger's attack must be more than conclusory."  *Id.*; *United States v. Bennett*, 905 F.3d 931, 934 (6th Cir. 1990).  "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Allegations of negligence or innocent mistake are insufficient."  *Franks*, 438 U.S. at 171.  An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations.  *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

Defendants first object to the magistrate judge's conclusion that the inaccurate statement that defendant Walker rented vehicles from Avis in Knoxville did not provide a

25

basis for invalidating the affidavit [Doc. 68, p. 4]. Defendants do not dispute the magistrate judge's finding that "only the information that Defendant Walker's vehicle rentals occurred *in Knoxville* is false" [*Id.* at 4–5; Doc. 66, p. 16]. Rather, their disagreement seems to lie with the determination that there was no information that the phrase "in Knoxville" was deliberately or recklessly included by the affiant to mislead the issuing judge [Doc. 68, pp. 4–5]. Defendants specifically argue that there is no other reason for including the phrase "in Knoxville" except to insinuate that defendant Walker was using vehicles in Knoxville in connection with the residence for the purpose of drug dealing and to bolster the affiant's credibility [*Id.*]. According to defendants, this "certainly shows reckless indifference of false information in the affidavit" [*Id.* at 5].

The Court disagrees. Despite defendants' broad contention about the "sole reason" for the affiant including the phrase "in Knoxville," they still have not pointed to any information in the record that the affiant deliberately or recklessly included the phrase to mislead the issuing judge or that the affiant subjectively "entertained serious doubts as to the truth" of the statement. *See Bateman*, 945 F.3d at 1008. Absent such information, the Court construes defendants' attack as nothing more than conclusory and finds that they have failed to make the requisite preliminary showing. *See Franks*, 438 U.S. at 171; *Graham*, 275 F.3d at 505.

Defendants also do not dispute the magistrate judge's finding that all other information in the affidavit regarding the rental vehicles (aside from the statement that defendant rented the vehicles "in Knoxville") was not contradicted by the exhibits provided by the parties—specifically, that defendant Walker rented vehicles from Avis, that he drove

them to the residence, that the rental vehicles were seen parked at the residence, and that Kenneth Roberts rented vehicles in Knoxville [*Id.* at 5; Doc. 66, pp. 10, 16]. However, they seem to argue that those facts (stripped of the reference to defendant Walker renting cars in Knoxville) have no bearing on the likelihood of drug activity at the residence and cannot be used to support a finding of probable cause [Doc. 68, p. 5]. The Court construes this argument as an objection to the magistrate judge's finding that the included phrase "in Knoxville" has little, if any bearing on probable cause because the rental vehicles were constantly at the residence and defendant Walker rented some of the vehicles [Doc. 66, p. 16].

In construing defendants' objection as such, the Court notes that defendants merely disagree with the magistrate judge's conclusion without providing any reasoning such that the Court can evaluate on which grounds the magistrate judge's conclusion may have been erroneous. *See VanDiver v. Martin*, 304 F. Supp. 2d 934 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection[.]'"). Even if the Court were to consider this a proper objection, it does not see how defendants' argument is supported. Officers (confirming the confidential informant's report) observed two rental vehicles at the residence and that the rental vehicles were constantly being exchanged for others, which belonged to defendant Walker and Kenneth Roberts [Doc. 36-1, p. 3]. The affidavit further states that based upon his training and experience, the affiant knows that "[d]rug dealers often use . . . rental vehicles to transport and store illegal drugs" [*Id.* at 3]. Thus, the frequent exchange of rental vehicles at the residence,

regardless of where the vehicles were rented, is a circumstance supporting an inference that drug trafficking was occurring at the residence. The Court fails to see how the fact that defendant Walker rented the vehicles in Michigan as opposed to Knoxville alters that conclusion, and defendants do not provide any further explanation.

Finally, defendants object to the magistrate judge's conclusion that police surveillance corroborated the information from the confidential informant [Doc. 68, p. 5]. They then argue that the conclusion about corroboration "is not amply supported" because there was no mention of defendant Walker being linked to alleged drug activity at the residence, which defendants claim is a material omission such that there is not a sufficient basis for concluding that defendant Walker was connected with drug activity [*Id.*]. Upon review of defendants' motion, briefs, and objections, as well as the R&R, the Court notes that these arguments were raised before the magistrate judge and that the magistrate judge correctly addressed them in the R&R [Doc. 52, pp. 3–4; Doc. 66, pp. 16–18]. Defendants presented both these arguments as two separate grounds that justify a *Franks* hearing, though they seemed to combine the two in their objections [*Id.*]. Further, beyond broadly objecting to these findings, defendants do not explain why the magistrate judge erred in arriving at those conclusions.

Since these objections reiterate arguments that defendants have previously made, their objections are considered general objections that do not sufficiently identify alleged errors in the R&R. *See Howard*, 932 F.2d at 509. The district court does not need to provide *de novo* review where objections to a report and recommendation are general. *See Mira*, 806 F.2d at 637. Accordingly, the Court overrules defendants' objections to the

28

extent they reiterate their previously raised arguments and adopts the magistrate judge's R&R as to those arguments.

For all these reasons, the Court finds that the magistrate judge correctly concluded that defendants have not established that Detective Neely included false statements in the search warrant affidavit with disregard or recklessness regarding the truth of those statements, and therefore, a *Franks* hearing is not warranted. Defendants' objections on this ground are **OVERRULED**.

## IV. Conclusion

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendants' objections [Docs. 67, 68] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 66] and incorporates it into this Memorandum Opinion and Order. The Court hereby **GRANTS** defendant Walker's Motion to Adopt the Motion to Suppress [Doc. 49] and **DENIES** defendants' Motion to Suppress [Doc. 36] and defendants' Motion for *Franks* Hearing [Doc. 52].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

29