IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
v.                                  )           No. 3:23-CR-35-TAV-JEM
                                    )
DANIELLE PRICE and                  )
LARRY O. WALKER, II,                )
                                    )
                Defendants.         )

**REPORT AND RECOMMENDATION**

This case is before the undersigned for report and recommendation on Defendant Danielle

Price's and Defendant Larry Walker's joint, reopened suppression motion [Docs. 36, 52 & 117].

The undersigned permitted Defendants to reopen the suppression hearing and granted a hearing

pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on four alleged false statements in the

affidavit supporting a search warrant for their residence [Doc. 129 p. 11]:

> (1)    "The female driver did admit to purchasing Heroin from one
>        of the targets of this Search Warrant, Kenneth Roberts"
>        [Doc. 36-1 p. 5];
>
> (2)    "Before the K-9's arrival, the female did admit to Heroin
>        being in the vehicle" [*id*.];
>
> (3)    "Investigators observed the female performing actions in her
>        lap that are consistent with prepping narcotics for use"
>        [*id*. at 4]; and
>
> (4)    "Investigators also found that the female was preparing lines
>        of Heroin on her phone screen for snorting" [*id*. at 5].

Defendants argue that the affiant deliberately or recklessly included these false statements in the

affidavit and that the statements are necessary to probable cause [Doc. 117 pp. 4–5].

After considering the testimony and exhibits, the parties' arguments, and the relevant case law, the undersigned finds that only the second of the four statements is false and false only as to the timing of when the female driver admitted heroin was in her vehicle. Nevertheless, the undersigned finds that Defendants fail to show by a preponderance of the evidence that the inaccurate portion of this statement is material to probable cause, whether considered individually or in combination with the conceded false statement on the location where Defendant Walker rented vehicles. Accordingly, the undersigned again recommends that the District Judge **DENY** Defendants' suppression motions [Docs. 36 & 52].

## I. BACKGROUND

The Indictment charges Defendants Price and Walker with conspiring to distribute fifty grams of methamphetamine and forty grams of fentanyl (Count One) from September 1, 2022, through March 7, 2023 [Doc. 11 p. 1]. Both Defendants are also charged with possession of methamphetamine and fentanyl with intent to distribute (Count Two) and possession of firearms in furtherance of drug trafficking (Count Three), both allegedly occurring on March 7, 2023 [*Id*. at 1–2]. Defendant Walker is further charged with being a felon in possession of a firearm on March 7, 2023 (Count Four) [*Id*. at 2]. These charges arise, at least in part, from the March 7, 2023 search of a residence at 1940 Old Callahan Drive in Knoxville, Tennessee ("the residence") [*See* Doc. 66 pp. 1–2].

On April 27, 2023, Defendant Price, who at that time was represented by Assistant Federal Defender Benjamin Sharp, moved to suppress evidence seized from her residence pursuant to a search warrant ("the suppression motion") [Doc. 36]. Defendant Price argued that the affidavit of Knox County Sheriff's Office ("KCSO") Detective Jeff Neely failed to provide probable cause for a search warrant because it does not demonstrate a nexus between the residence and criminal

activity [*Id.* at 3–5]. On June 16, 2023, Defendant Walker, at that time represented by Attorney Gerald Gulley, moved to adopt Defendant Price's suppression motion [Doc. 49]. On June 30, 2025, Defendant Walker filed a Motion for Determination of Validity of Search Warrant Based on *Franks v. Delaware* ("the *Franks* motion"), arguing that Detective Neely's affidavit contains false statements and material omissions that impact probable cause [Doc. 52 pp. 3–4]. Defendant Price subsequently made an oral motion to join in Defendant Walker's *Franks* motion [Doc. 55 p. 4 (Transcript of Aug. 9, 2023 Suppression Hearing)].

The parties appeared before the undersigned on August 9, 2023, for a motion hearing on Defendant Price's suppression motion, Defendant Walker's *Franks* motion, and each Defendant's motion to join in the other's motion [*See* Doc. 53, Minutes]. The Court heard the parties' arguments, permitted the Government to file a late response to the *Franks* motion and a late exhibit, and allowed post-hearing briefs [*See* Docs. 56, 59 & 60].

On October 3, 2023, the undersigned entered a Report and Recommendation recommending denial of the suppression and *Franks* motions [Doc. 66]. As to the *Franks* issue, Defendants alleged one false statement—that Defendant Walker rented vehicles from Avis in Knoxville—and two material omissions—that the affidavit provides no information on the reliability of the confidential informants and gives no information that police surveillance resulted in observations connecting Defendants with the purported drug transactions on February 28, 2023, or on March 7, 2023 [*Id.* at 13]. The undersigned found:

1.  that both Defendants Price and Walker have standing to challenge the search of the residence;

2.  that Detective Neely's affidavit provides probable cause to search the residence because it demonstrates a nexus between the residence and drug trafficking;

3

3.      that there is no evidence that Detective Neely intentionally or recklessly included a false statement in the affidavit or made an omission that is material to probable cause; and

4.      that law enforcement searched the residence in good faith reliance on the search warrant.

[*Id.* at 20]. On December 4, 2023, following the parties' objections and response [Docs. 67, 68 & 69], the District Judge denied the suppression and *Franks* motions and adopted the Report and Recommendation in whole [Doc. 70 pp. 2, 29].

On January 26, 2024, Defendant Walker filed a pro se motion for new counsel and an interlocutory appeal of the suppression ruling [Doc. 74]. Defendant Walker's interlocutory appeal was dismissed for lack of appellate jurisdiction [Docs. 80 & 81]. On March 6, 2024, the undersigned substituted Attorney Nathaniel Evans as counsel for Defendant Walker [Doc. 84]. On May 16, 2024, the undersigned substituted Attorney Mike Whalen as counsel for Defendant Walker [Doc. 95]. On September 11, 2024, Defendant Walker moved the Court to reopen the suppression and *Franks* motions because he was required to proceed at the suppression hearing with counsel whom he did not trust [Doc. 103 p. 4; *see* Doc. 104 (amended motion)]. The undersigned denied Defendant Walker's request to reopen the suppression hearing, finding it "untimely, unsupported by law or fact, and prejudicial to the prompt administration of justice" [Doc. 108 pp. 6–7]. Defendant Walker filed an Objection to Report and Recommendation[1] that Defendant Larry Walker's Motion to Reopen His Motion to Suppress and for *Franks* Hearing Be Denied [Doc. 112], which remains pending.

On November 14, 2024, the undersigned substituted current counsel Attorney Michael Menefee to represent Defendant Price [Doc. 111]. On February 13, 2025, Defendant Price moved

---

[1]     The undersigned denied Defendant's motion to reopen in a Memorandum and Order, not a Report and Recommendation [*See* Doc. 108].

to reopen the suppression hearing, arguing that on January 31, 2025, the Government provided video footage from a body camera and an in-car camera depicting "the events immediately preceding the search warrant" [Doc. 117 p. 2]. She maintained that the newly disclosed video footage reveals several statements in the search warrant affidavit are false: that a female driver, whom officers stopped on the morning of the execution of the search warrant, admitted to purchasing heroin from Kenneth Roberts; that before the arrival of a K-9 unit, the female driver admitted that heroin was in the vehicle; and that officers observed the female driver "performing actions in her lap that are consistent with prepping narcotics for use" and "found that the female was preparing lines of [h]eroin on her phone screen for snorting" [*Id*. at 3–4]. Defendant Price asserted the affiant included these statements in the affidavit knowingly, intentionally, or with reckless disregard for the truth, and for the purpose of misleading the issuing judge [*Id*. at 4]. She argued that these false statements were necessary to probable cause as both evidence of drug trafficking and to corroborate the reliability of the confidential source [*Id*.]. Defendant Price maintained that these statements, when combined with the misrepresentation exposed at the initial hearing, require the Court to conduct a *Franks* hearing [*Id*.].

The Government responded in opposition to reopening the suppression hearing [Doc. 121 p. 1]. It conceded that one of the statements—that the female admitted that heroin was in the vehicle before the K-9 arrived—"appears to be false" [*Id*. at 2]. Despite this concession, the Government argued the Court should deny the motion to reopen because the affiant did not knowingly or recklessly include this statement in the affidavit and the statement is not necessary to probable cause [*Id*.]. The Government stated that new defense counsel requested that it seek video footage of the stop of a female described in the affidavit [*Id*. at 3]. According to the Government, pursuant to this inquiry, the Knoxville Police Department ("KPD") provided

previously unknown body camera footage to the Government, which disclosed it to Defendant Price in February 2025 [*Id.*]. The Government argued the single false statement is not necessary to probable cause [*Id.* at 7].

In reply, Defendant Price argued that the combination of the false statements, including the affiant's statement that the female identified Kenneth Roberts as her heroin supplier, is material to probable cause [Doc. 123 pp. 3–4].

On February 25, 2025, the undersigned substituted Attorney Christopher Rodgers as counsel for Defendant Walker [Doc. 120]. On March 18, 2025, Defendant Walker moved to adopt Defendant Price's motion to reopen, stating that the grounds alleged in the motion also apply to him [Doc. 126 p. 1]. The Government did not respond to Defendant Walker's motion.

On May 9, 2025, the undersigned granted Defendants' joint motion to reopen the suppression hearing and for a *Franks* hearing on four statements in the affidavit which Defendants allege are false [Doc. 129 pp. 8–9, 11]:

> (1) "The female driver did admit to purchasing Heroin from one of the targets of this Search Warrant, Kenneth Roberts" [Doc. 36-1 p. 5];
>
> (2) "Before the K-9's arrival, the female did admit to Heroin being in the vehicle" [*id.*];
>
> (3) "Investigators observed the female performing actions in her lap that are consistent with prepping narcotics for use" [*id.* at 4]; and
>
> (4) "Investigators also found that the female was preparing lines of Heroin on her phone screen for snorting" [*id.* at 5].

[Doc. 129 pp. 8–9]. The undersigned found the late disclosed body camera video called the veracity of these statements into question [*Id.* at 9]. From reviewing the video recording, the undersigned concluded that Defendant had made a sufficient preliminary showing that at least the affiant's

statement that the female identified Kenneth Roberts as her supplier when shown a photograph on the affiant's cell phone was intentionally or recklessly false [*Id*. at 10]. The undersigned also found Defendants made a prima facie showing that the four statements were material:

> [T]he information regarding the stop of the female on March 7, 2023, is the only verified drug transaction described in the affidavit. The affidavit contains no controlled buys. Nor does it contain information from confidential informants present during drug transactions or who observed drugs or other evidence of drug trafficking at the residence. The female's identification of her supplier is therefore material to the probable cause analysis.

[*Id*.]. Accordingly, the undersigned permitted a *Franks* hearing [*Id*. at 11].

## A.      *Franks* Hearing on June 4, 2025

The parties appeared for a *Franks* hearing on June 4, 2025 [Doc. 130, Minutes]. Assistant United States Attorney Brent N. Jones appeared on behalf of the Government. Attorney Michael B. Menefee represented Defendant Price. Attorney Christopher Rogers represented Defendant Walker. Both Defendants were also present.

The Government presented the testimony of KCSO Detective Jeff Neely [Doc. 145, Transcript p. 7]. He stated that in March 2023, he worked as a detective on the Drug-Related Death Task Force [*Id*. at 8]. According to Detective Neely, the eight-person task force is comprised of two county officers and six city officers [*Id*.]. He related that when the task force received a report of a drug-related death, they would "work[ the case] backwards to try to identify the dealer" [*Id*.]. He said the task force handled approximately five hundred cases each year [*Id*.].

Detective Neely stated that he worked on a case involving a deceased male, Andrew Anderson, which led to the investigation of Danielle Price, Larry Walker, and Kenneth Roberts [*Id*. at 9]. Detective Neely was the affiant on a search warrant related to this investigation and signed on March 7, 2023 [*Id*.]. Detective Neely recalled that a section of the affidavit described

surveillance and a hand-to-hand drug transaction occurring on March 7, 2023 [*Id*. at 10]. He stated that he was conducting surveillance that day at a business across the street from the residence and responded to the scene sometime after an officer approached the driver involved in the exchange [*Id*. at 10–11]. Detective Neely stated that he intended to seek a search warrant for the residence [*Id*. at 11]. He said when he arrived on the scene where the driver was stopped, an officer was already talking with the driver in the parking lot [*Id*.]. Detective Neely said his practice was to allow the officer to continue speaking with the individual and for the officer to brief him on the conversation afterward [*Id*.]. He confirmed that is what happened here [*Id*. at 12].

Detective Neely said Detective John Holmes's body camera recorded some of the conversation with the driver [*Id*.]. He said based on the information from Detective Holmes, he obtained the search warrant in this case [*Id*.]. Detective Neely said he spoke with the driver briefly at the scene and showed her a picture of Kenneth Roberts, an individual law enforcement had been surveilling [*Id*. at 12–13]. He said the week before, law enforcement identified Roberts through surveillance of the residence, car rental records, and a photograph [*Id*. at 13]. Detective Neely said on March 7, he did not know what Defendant Walker looked like [*Id*.].

Detective Neely affirmed that the affidavit states that before the K-9 arrived, the female admitted that heroin was in the vehicle [*Id*.]. He acknowledged this statement is not accurate [*Id*.] He denied trying to mislead the judge with this statement [*Id*. at 13–14]. Detective Neely explained that he thought he was told that the female admitted heroin was in the vehicle before the K-9 arrived, but instead, she admitted heroin was in the car after the dog alerted but before officers entered her vehicle to conduct a search [*Id*. at 14].

Detective Neely said the body camera recording shows that Detective Holmes remarked to the female that powder was on the screen of her cell phone and the female stated the phone was

on her lap [*Id*.]. Detective Neely states that later in the conversation recorded on the body camera video, the female says, "I was about to do it on my phone, and I covered it up with my coat when you guys walked up" [*Id*.]. He agrees this conversation occurred before he arrived and was relayed to him by another officer [*Id*. at 14–15]. After viewing a portion of Detective Holmes's body camera video from 0:45 to 2:06,[2] Detective Neely agreed that the female was bending over while sitting in the front seat of her Ford Focus [*Id*. at 15–16].

Detective Neely acknowledged that from approximately one minute into the body camera video through 22:50, when the dog alerted, the female had not admitted that she had heroin [*Id*. at 16]. The Government played a section of Detective Holmes's body camera video starting at 22:50 on the recording [Exh. 1 11:55:45]. An officer off screen states that the dog "hit" on the vehicle [*Id*. at 11:55:48]. At 23:27 on the recording, the driver agrees controlled substances are in the car and states they are in the console in a drawer [*Id*. at 11:56:21–28]. At 25:32 on the recording, an officer off screen says, "I found what was on your phone and in your seat" [*Id*. at 11:58:27–28]. A few seconds later, the driver says she was "fixing to snort it," and Detective Holmes says that is what he thought she was doing based on the way she was moving about [*Id*. at 11:58:38–43].

On the video, the driver confirms that she went to Food City to meet her supplier [*Id*. at 11:59:38–41]. She states the person she was meeting was driving a four-door, burgundy Toyota SUV [*Id*. at 12:00:55–12:01:03]. The driver states she met with a black male who goes by "C" [*Id*. at 12:01:10–14]. She said she thinks C is from Detroit, and he has a brother who said his name is George [*Id*. at 12:01:21–30]. The driver confirms that C met her "today" [*Id*. at 12:01:58–

---

[2]     The video recording from Detective Holmes's body camera shows that as Detective Holmes walked up to the Ford Focus and knocked on the window, the driver was leaning over the passenger seat [Exh. 1 11:33:58–11:34:03].

9

12:02:00]. The driver says that she thinks C and his brother stay around Callahan Drive, and she has met C before at the Asian Café near Callahan Drive [*Id*. at 12:03:22–44]. She says that both C and George are "here," but George seems to be gone right now to "get more stuff" [*Id*. at 12:08:02–06]. She says George and C drive different vehicles and agrees that they are rental vehicles [*Id*. at 12:08:12–17]. The driver says she mainly deals with George but has had to deal with his brother since George has been gone for a couple of days [*Id*. at 12:08:33–12:09:30]. She says for the last two months she bought at least $100 of drugs from George or C daily [*Id*. at 12:09:31–45].

At 47:38 on the video, Detective Holmes introduces Detective Neely to the driver [*Id*. at 12:20:32–34]. Detective Neely shows the driver a photo on his cell phone, and she identifies the person in the photo as George [*Id*. at 12:20:40–48]. Detective Neely asks if this is who she met with today, and she says, "No" [*Id*. at 12:20:49–52]. While Detective Neely is standing with the driver and Detective Holmes, the driver confirms Detective Holmes's statement that today she met with George's brother "C" [*Id*. at 12:20:57–12:21:00].

Regarding this last video clip, Detective Neely testified that he showed the female a photograph of Kenneth Roberts [Doc. 145 p. 17]. Detective Neely said he did not have a photograph of Defendant Walker with him that day [*Id*. at 17–18]. He agreed the only photograph he had to show the driver was of Kenneth Roberts and that this was why he included in the affidavit that the female admitted purchasing heroin from Roberts [*Id*. at 18]. Detective Neely acknowledged that the female told investigators, and it was relayed to him, that the female said she got the heroin from C that day [*Id*.]. He agreed that C could have been Walker or someone else and that the female knew him only as C [*Id*.]. Detective Neely agreed that he stated in the affidavit, "The female driver did admit to purchasing heroin from one of the targets of the Search Warrant, Kenneth Roberts" [*Id*. at 19]. He denied that he was trying to mislead with this statement [*Id*.].

10

The Government played one more segment of the video in which an officer on the scene tells Detective Holmes to be careful with the driver's cell phone because it has powder on it [*Id*. at 12:22:10–13]. Detective Neely resumed his testimony and said after meeting with the female driver, he finished his affidavit and applied for the search warrant [*Id*. at 20].

On cross-examination by Attorney Menefee, Detective Neely testified that throughout his investigation, he made notes in a Word document so that he could paste information from his notes into the affidavit when he prepared his affidavit for a search warrant [*Id*.]. Counsel began cross-examining Detective Neely on statements on page one of the affidavit [*Id*. at 21–25]. The Court conducted a sidebar, and defense counsel argued that once granted a *Franks* hearing, they could question the affiant about every statement in the affidavit and are not limited to the statements they alleged are false [*Id*. at 26–28]. The Government objected to cross-examination of the witness beyond the four allegedly false statements [*Id*. at 28–29]. The Court adjourned the hearing and permitted briefing on the applicable legal standard and appropriate scope of the *Franks* hearing [*Id*. at 31, 33]. The Court instructed the witness that he was excused but subject to recall later [*Id*. at 34].

In their briefs, Defendants argued they should be allowed to cross-examine the affiant on the veracity of all sworn statements in the affidavit, as well as his investigative processes, sources of information, material omissions, and assertions in other sworn statements [Doc. 131 p. 8; Doc. 132 pp. 5–6]. They asserted that such broad cross-examination is necessary to show the affidavit lacks probable cause, to impeach the affiant's credibility, to show the affiant's knowledge and intent, and to show that he did not act in good faith in relying on the search warrant [Doc. 131 pp. 2–8; Doc. 132 pp. 5–6]. The Government maintained that direct examination was limited to the four alleged false statements and that cross-examination must also be so limited [Doc. 134

p. 5]. It also argued that a *Franks* hearing is limited to those issues for which Defendants have made a substantial preliminary showing of deliberate or reckless and material falsehood [*Id*. at 4–5].

On July 10, 2025, the undersigned found the scope of the *Franks* hearing limited to the four alleged false statements initially raised by Defendant Price and joined by Defendant Walker and to the effect of those four statements on probable cause in combination with the previously conceded false statement that Defendant Walker rented vehicles in Knoxville [Doc. 135 pp. 2, 8–9].

### B.     Continuation of *Franks* Hearing on September 17, 2025

The parties appeared for a continuation of the *Franks* hearing on September 17, 2025. AUSA Jones appeared on behalf of the Government. Mr. Menefee represented Defendant Price, and Mr. Rogers represented Defendant Walker. Both Defendants appeared for the hearing.

The Government recalled Detective Jeff Neely. On cross-examination by Mr. Menefee, Detective Neely testified that the portion of his affidavit at issue is the section titled "Surveillance/Deal," which describes a drug transaction on March 7, 2023, and law enforcement's interview of a female participant shortly thereafter [Doc. 36-1 pp. 4–5 (affidavit)].[3] He agreed that the affidavit states on March 7, 2023, officers conducting surveillance at the address saw a Toyota Highlander leave the residence.[4] Detective Neely agreed the affidavit relates the investigation

---

[3]     The Government introduced Detective Neely's affidavit as Exhibit 2.

[4]     The affidavit states that law enforcement followed the Highlander to a grocery store and saw it park beside a Ford Focus [Exh. 1 p. 4]. After the drivers spoke briefly, the Highlander and the Focus left the parking lot and went to a residential area [*Id*.]. Surveilling officers saw the vehicles stop on the road and observed a "hand-to-hand" drug transaction between the driver of the Highlander and the white female driver of the Focus [*Id*.]. Some officers followed the Focus, which parked in a McDonald's parking lot, and others followed the Highlander, which immediately

continued when law enforcement interviewed the female driver of a Ford Focus. Detective Neely agreed that the affidavit states that before a K-9 arrived on the scene, the female admitted that heroin was in her vehicle. He stated that he was not present when Knoxville Police Department Detective John Holmes began speaking with the female. He said the female's statements were told to him later. Detective Neely said he was told that the female admitted drugs were in her car before the K-9 alerted, when instead she admitted drugs were in her car after the K-9 alerted.

Detective Neely stated that Detective Holmes interviewed the woman and Detective Holmes's body camera captured their conversation. He agreed the recording reveals that the female told Detective Holmes that she met with a man named "C" and that she also buys drugs from C's brother, George. Detective Neely said Detective Holmes did not tell him that the female identified either Kenneth Roberts or Defendant Walker. Detective Neely stated that he showed the female a picture of Kenneth Roberts, and the female identified the person in the photograph as George. He agreed that the affidavit does not relate that Kenneth Roberts has an alias other than on the first page and does not identify his alias.

Detective Neely stated that he has worked in law enforcement for twenty years. He said in this case, the female was shown a photograph of someone whose name was known to law enforcement, and she gave the person's nickname. He agreed that he did not show the photograph of Roberts to the issuing judge, nor did he tell the judge that Roberts was identified using a photograph. He agreed he did not show the female a photo line-up but, instead, only showed her one photograph.

_____

returned to the residence [*Id*. at 4–5]. These parts of the affidavit were read into the record at the hearing.

13

Detective Neely agreed that the affidavit states that officers observed the female perform actions in her lap consistent with preparing narcotics for use. He said that the conversation on the body camera video shows the female admitted to using her phone screen as a surface from which to snort drugs. Detective Neely said the officer did not see the phone in the female's lap because she put it on the passenger seat as the officer approached her car.

Detective Neely said his affidavit states "[t]he female driver did admit to purchasing heroin from one of the targets of the search warrant, Kenneth Roberts." He explained that this sentence says the female admitted buying drugs from Roberts at an unspecified time. Detective Neely said he was not sure what the issuing judge thought after reading this sentence.

Detective Neely agreed that the female did not buy drugs from Roberts during the exchange observed by the surveillance team. Detective Neely said law enforcement saw Kenneth Roberts driving vehicles from the residence and "doing deals" in the days preceding the March 7 transaction. He said up to this point, the surveilling officers had not seen Defendant Walker at the residence. He stated that he did not know Defendant Walker was the person involved in the transaction with the female until they searched the residence and found him there.

Detective Neely said at the time the female identified C and George during the interview in the parking lot, the officers did not know if the female had C and George mixed up. He said by March 7, 2023, the investigation had revealed Defendant Walker as a person of interest, that Walker came and went from the residence, and that he rented vehicles that were seen at the residence. Detective Neely said, however, on March 7, law enforcement though Kenneth Roberts was involved in the transaction with the female. According to Detective Neely, upon the execution of the search warrant, the officers discovered that Defendant Walker had been the person involved

14

in the transaction with the female because the residence was under constant surveillance and only Defendants Walker and Price were inside when the officers entered.

Detective Neely agreed that although the affidavit states Defendant Walker rented vehicles at Avis in Knoxville, instead he rented the vehicles out of state. Detective Neely stated this was a mistake on his part. He agreed the spreadsheet [Exh. 3] that was a late exhibit to the initial suppression hearing was prepared by Avis. Detective Neely acknowledged that the spreadsheet contains information on vehicles rented after March 7, 2023, and that he relied on other paperwork when he prepared his affidavit. He agreed that the other paperwork [Exh. 4] did not contain Defendant Walker's name.

On cross-examination by Mr. Rogers, Detective Neely said he witnessed what appeared to be a hand-to-hand drug exchange between the female and the driver of the Highlander. He said the two vehicles were facing in opposite directions and stopped in the middle of the street. He said the female got out, went to the other vehicle's window, and a hand came out of the window and gave her something. He said the female got back into her vehicle, and both vehicles left. He agreed that he did not see any drugs or cash during the exchange.

Defendant Neely acknowledged that he was the affiant on a Knox County arrest warrant for simple possession and exchange of controlled substances for the female involved in the March 7 transaction. He agreed that his narrative on the arrest warrant does not mention a hand-to-hand exchange. Detective Neely said the narrative in the arrest warrant begins with the female pulling into the McDonald's parking lot.

Detective Neely said Detective Holmes's body camera video was not his video, and he did not know it existed. He said he did not have a body camera at this time and was not aware that Detective Holmes was wearing a body camera.

Detective Neely stated that the photograph he showed the female on March 7, 2023, was a picture of Kenneth Roberts. He agreed that the female did not buy drugs from Kenneth Roberts that day. He said the affidavit says the female bought drugs from Kenneth Roberts but does not specify that she bought drugs from him on March 7.

Detective Neely agreed that he linked Defendant Walker to this investigation of an overdose victim through cell phone records showing that Walker called the victim. He said this information came from data from the phone numbers of Walker and the victim analyzed by the phone carriers.

On redirect examination by AUSA Jones, Detective Neely testified that on the day of the hand-to-hand exchange involving the female, he was on the surveillance team following the female's Ford Focus. He said he was not present when the female was stopped in the McDonald's parking lot. At the time of the stop, he knew the names of Defendant Walker, Kenneth Roberts, and Danielle Price. Detective Neely said he arrived at the McDonald's parking lot six or seven minutes after Detective Holmes began talking to the female. He said when he arrived, Detective Holmes seemed to have developed a rapport with the female, and he did not interrupt the interview.

Detective Neely agreed that around 48:10 on Detective Holmes's body camera video, he approached the female and showed her a photograph. Detective Neely said the photograph was either a driver's license photograph or a mug shot. He agreed it was common for investigators to show photographs. Detective Neely denied that he had a picture of Defendant Walker on his phone and said he had only a photograph of Kenneth Roberts. He agreed that the female identified the photograph of Roberts as "George," not Kenneth Roberts. He also agreed that the female said she bought drugs from C, not George, that day. Detective Neely acknowledged that he could have been

clearer in his affidavit. He said he did not use the nicknames C or George in his affidavit because he was confused by them, having only seen Kenneth Roberts at the residence during surveillance.

Detective Neely said the information he provides the prosecutor is normally an exact replica of his case file and that he would typically retain a driver's license photograph used for identification in his case file. He stated that the photograph of Kenneth Roberts could have been left out of the information produced to the prosecutor during the copying process. Detective Neely stated he would typically pull up a driver's license photograph on his phone if the individual is local, but for an out-of-state person, he would use a physical picture in his possession.

Detective Neely testified regarding the car rental records, much of his communication with Avis was by telephone. He said when he ended the call, he would tell the representative that he needed copies of what they discussed. He acknowledged that his statement in the affidavit of the location where[5] Defendant Walker rented a vehicle was not accurate.

On recross-examination by Mr. Menefee, Detective Neely said the KCSO records division sent him a picture of Kenneth Roberts. He said that he printed the picture and then took a picture of it with his cell phone to have for identification purposes during surveillance. He said he does not keep these photographs on his phone but retains them in his file. Detective Neely clarified that he was not confused about the identity of Kenneth Roberts, but he was confused about the nicknames provided by the female and which nickname went with which person. He stated that law enforcement thought Kenneth Roberts was at the residence that day. He agreed that he learned who was present at the time officers arrested Defendants Price and Walker during the execution

---

[5]     AUSA Jones asked Detective Neely whether his statement that Larry Walker rented a car in Detroit was inaccurate, and Detective Neely agreed that it was. The affidavit, however, states "Larry Walker consistently rents vehicles from Avis in Knoxville" [Doc. 36-1 p. 4]. The undersigned finds that Detective Neely acknowledged this statement is false.

of the search warrant. Detective Neely said he obtained the search warrant before he arrested Defendant Walker.

On recross-examination by Mr. Rogers, Detective Neely stated that the circumstances were exigent because the officers thought the individual who sold drugs to the female and whom they thought was Kenneth Roberts knew they were talking to the female in the parking lot. He said they were in a hurry to get the search warrant to prevent the destruction of evidence.

The undersigned heard the parties' arguments and took the matter under advisement. This issue is ripe for adjudication.

## II.    ANALYSIS

The Fourth Amendment protects individuals against unreasonable searches or seizures of "their persons, houses, papers, and effects[.]" U.S. Const. amend IV. It requires that law enforcement have probable cause and obtain a search warrant before searching a residence. *Collins v. Virginia*, 584 U.S. 586, 593 (2018) ("At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (citation omitted & modified)).

Law enforcement obtained a search warrant for Defendants' residence[6] based upon the affidavit of Detective Neely. An affidavit supporting a search warrant is presumed to be valid. *United States v. Bowman*, No. 24-5835, 2025 WL 1721155, at *2 (6th Cir. June 20, 2025) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019); *see also United States v. Sanders*, 106 F.4th 455, 470–71 (6th Cir.) (en banc)

---

[6]     The undersigned previously found both Defendants had standing to challenge the search of the residence because Defendant Price was the lessee and Defendant Walker was at least an overnight guest [Doc. 66 pp. 4–5 n.2].

(explaining that the burden is a heavy one), *cert. denied*, 145 S. Ct. 603 (2024). To warrant a *Franks* hearing, a defendant "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (quoting *Franks*, 438 U.S. at 155–56). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155–56). A defendant challenging the veracity of statements in the affidavit cannot rely on "'conclusory'" assertions, *Bowman*, 2025 WL 1721155, at *2 (quoting *Sanders*, 106 F.4th at 471), but instead, must identify "'specific false statements'" that are accompanied by an offer of proof, *id.* (quoting *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014)).

Here, Defendants Price and Walker made the substantial preliminary showing regarding four statements in the affidavit [Doc. 129 pp. 8–9]:

(1) "The female driver did admit to purchasing Heroin from one of the targets of this Search Warrant, Kenneth Roberts" [Doc. 36-1 p. 5];

(2) "Before the K-9's arrival, the female did admit to Heroin being in the vehicle" [*id.*];

(3) "Investigators observed the female performing actions in her lap that are consistent with prepping narcotics for use" [*id.* at 4]; and

(4) "Investigators also found that the female was preparing lines of Heroin on her phone screen for snorting" [*id.* at 5].

The showing was based upon a late-discovered video recording from the body camera of an officer on the scene of the March 7, 2023 stop and questioning of the female driver referenced in the affidavit [Doc. 129 p. 9]. Thus, the undersigned found a *Franks* hearing was warranted [*Id.* at 10].

In *Franks*, the Supreme Court held that if the defendant makes the "substantial preliminary showing" described above, the Fourth Amendment mandates a hearing if the defendant requests

one. 438 U.S. at 156. "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *Crawford*, 943 F.3d at 309 (citing *Franks*, 438 U.S. at 171). Again, Defendants shoulder a "heavy burden" at a *Franks* hearing. *Sanders*, 106 F.4th at 471. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156; *Cooper v. United States*, No. 24-5634, 2024 WL 5319016, at *4 (6th Cir. Nov. 22, 2024) ("If the defendant clears that hurdle [(the preliminary showing)], he is entitled to a hearing during which he has the burden to prove the alleged perjury and that the rest of the affidavit is insufficient to establish probable cause." (citing *Franks*, 438 U.S. at 156)).

The *Franks* hearing, like the preliminary showing, requires the Court to evaluate the sufficiency of probable cause in the absence of the alleged false statement or statements. *Sanders*, 106 F.4th at 471 (citing *Franks*, 438 U.S. at 156, 169–70). In so doing, all the other statements in the affidavit retain their presumption of validity. *Accord United States v. Shaffer*, 238 F. Supp. 3d 913, 920 (E.D. Ky. Mar. 3, 2017) (observing that the defendant's "speculative, conclusory" allegations of false statements are insufficient to trigger a *Franks* hearing and to hold otherwise would nullify the presumption of validity afforded the search warrant affidavit and "subvert the purpose of the 'substantial preliminary showing' standard—which is 'to prevent the misuse of a veracity hearing for purposes of discovery or obstruction'" (quoting *Franks*, 438 U.S. at 170)), *aff'd*, 781 F. App'x 404 (6th Cir. 2019). Thus, if Defendants can prove by a preponderance of the evidence that one or more of the four statements are false, were intentionally

20

or recklessly included in the affidavit, and are material to probable cause, the evidence seized pursuant to the search warrant must be suppressed. *See United States v. Chapman*, 112 F. App'x 469, 471 (6th Cir. 2004) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Evaluating the alleged false statements here, the undersigned finds Defendants fail to carry their burden of showing the statements are both intentionally or recklessly false and material to probable cause.

### A.     Purchase of Drugs from Kenneth Roberts

At the end of the paragraph describing the interview of the female driver of the Ford Focus and the alert of the drug detection dog on her vehicle, the affidavit states "[t]he female driver did admit to purchasing Heroin from one of the targets of this Search Warrant, Kenneth Roberts" [Doc. 36-1 p. 5]. Defendants argue that this statement is false because Detective Holmes's body camera video shows that that the driver said she met C to buy drugs on the day of the stop and regularly purchases drugs from C's brother George [Doc. 117 p. 3]. They contend that "[a]t no time during the stop did the female driver implicate Kenneth Roberts, Larry Walker, II, or Danielle Price" [*Id.*].

At the September 17 hearing, defense counsel[7] argued that that Detective Neely deliberately included carefully constructed false statements in his affidavit and omitted important information. Defendants asserted the statement in the affidavit that the female admitted purchasing drugs from Kenneth Roberts relates to the transaction with the driver of the Toyota Highlander

---

[7]     Mr. Menefee made the specific arguments regarding the alleged false statements in the affidavit, and Mr. Rogers joined in these arguments. Mr. Rogers added that the Court should carefully weigh the validity and import of the statements because the search warrant is for the search of a home.

and, thus, is false because the female did not identify the driver of the Highlander as Kenneth Roberts. Instead, the female said she bought drugs from a man named C who had a brother named George. Defense counsel argued that the affidavit does not mention the aliases C or George, does not associate C or George with anyone linked to the residence, nor does it mention that the female identified George from a photo. Defendants assert that although Detective Neely testified that he was confused by the female's comments regarding C and George, Detective Neely failed to communicate that confusion in the affidavit. Instead, Detective Neely states in the affidavit that the female identified Kenneth Roberts as the individual from whom she bought drugs on March 7, when Detective Neely knew that was not true.

Defendants also argued that this false statement (that the female admitted purchasing heroin from Kenneth Roberts) is essential to probable cause because it provides "the direct link" or nexus between the residence and criminal activity. Defense counsel maintained that aside from this statement, the only evidence tied to the residence is an overdose death from September 2022, a confidential informant saying cars and people are frequently coming and going from the residence, and rental records showing rental cars parked at the residence. Defendants maintain that this remaining information is insufficient to show that evidence of drug trafficking would be at the residence.

Upon review, the video recording from Detective Holmes's body camera shows that the female identified a photograph of as a person whom she knew as George. The video also shows that the female said she purchased drugs from George and his brother C daily for the last two months and that she mostly deals with George. Detective Neely testified that the photograph he showed the female was of Kenneth Roberts. Thus, the body camera video combined with Detective

Neely's testimony shows that the statement in the affidavit that the female driver of the Ford Focus said she purchased heroin from Kenneth Roberts is not false.

Defendants argue that the statement identifying Kenneth Roberts is misleading because the female told Detective Holmes and Detective Neely that she did not purchase heroin from George on March 7, 2023, but instead from C. But even if the statement identifying Kenneth Roberts as the female's heroin supplier is viewed as misleading, the identity of the individual driving the Toyota Highlander is not material to probable cause.[8] Officers surveilled the Highlander as it left the residence, met with the driver of the Ford Focus in the Food City parking lot, and traveled with the Ford Focus to a residential area. Officers observed the driver of the Ford Focus engaged in what appeared to be a drug transaction with the driver of the Highlander. Officers then followed both vehicles, observing the Highlander go directly back to the residence and subsequently finding heroin in the Ford Focus. Law enforcement's surveillance of the Toyota Highlander to and from the residence to what they confirmed through the stop of the driver of the Focus was a drug transaction creates the nexus to the residence. *See Sanders*, 106 F.4th at 463 ("Evidence that one leaves a 'residence, engage[s] in a drug transaction, and then return[s] into the residence' 'plainly demonstrate[s] a sufficient nexus' with the location." (citations omitted)); *see also United States v. Florence*, No. 24-3729, 2025 WL 2539022, at *2 n.1 & *3 (6th Cir. Sept. 4, 2025) (noting that "the officers' observation of [the defendant] leaving his residence, completing a single drug transaction, and returning to a residence was enough for the *Sanders* court to find probable cause to search that residence" (citing *Sanders*, 106 F.4th at 463)). And, as discussed at length in the

---

[8] The undersigned previously found that the affiant's failure to identify either Defendant Walker or Kenneth Roberts as the persons who engaged in the drug transactions on February 28 and March 7, 2023, is not a material omission because the affidavit provides a nexus between the residence and evidence of drug trafficking without this information [Doc. 66 pp. 17–18].

prior Report and Recommendation, the March 7 transaction is not the only link between the residence and drug trafficking [*See* Doc. 66 pp. 6–12].

Defendants also argue that the absence of the female's information on George, C, and that she identified her supplier from a single photograph are material omissions. Omissions, too, can form the basis for a *Franks* challenge, but "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Adkins*, 107 F.3d 1213, 1217 (6th Cir. 1997) (citation omitted). This is because an affidavit need not include all facts gathered over the course of an investigation. *Id*. Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). But the omitted information on C, George, and the female's identification of George with a photograph of Kenneth Roberts is not material to probable cause because it would only strengthen probable cause if included. *See Adkins*, 107 F.3d at 1217 ("If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." (citation omitted)).

### B. Admission of Heroin in Vehicle

The affidavit states that as law enforcement interviewed the female driver of the Ford Focus, a drug detection dog arrived on the scene [Doc. 31-1 p. 5]. "Before the K-9's arrival, the female did admit to Heroin being in the vehicle" [*Id*.]. Defendants argue this statement is false

because Detective Holmes's body camera video shows this admission occurred after the dog alert not before. Both Detective Neely and the Government concede that the affidavit's information on the timing of this admission—that it occurred before the dog alert—is false. Even so, Defendants fail to show that Detective Neely intentionally or recklessly made this statement or that the timing of the admission is material to probable cause.

Detective Neely testified that when he arrived on the scene, Detective Holmes was already speaking with the female and, thus, Detective Neely hung back and did not interrupt their conversation. Detective Neely also testified that he based the information in the affidavit on when the female admitted the vehicle contained heroin on information from other officers. The Court has no evidence that Detective Neely stated the admission occurred before the dog alert to mislead the issuing judge.

Additionally, even though false, the timing of the female's admission is not material to probable cause. The affidavit relates that following the dog alert, officers searched the car and found "a baggie that contained .5 grams of a tan substance believed to be Heroin" [Doc. 36-1 p. 5]. The preceding statement that prior to the drug dog's arrival, the female admitted heroin was in the vehicle could be omitted with no impact on probable cause.

### C.     Prepping Narcotics on Lap and on Cell Phone[9]

After describing the hand-to-hand exchange between the driver of the Toyota Highlander and the female driver of the Ford Focus, the affidavit relates that the Focus parked at a McDonalds restaurant and "[i]nvestigators observed the female performing actions in her lap that are consistent with prepping narcotics for use" [Doc. 36-1 p. 4]. After the dog alert and the search of the vehicle,

---

[9]     The undersigned considers the third and fourth alleged false statements together because they are similar.

officers found a baggie of suspected heroin in the car and "[i]nvestigators also found that the female was preparing lines of Heroin on her phone screen for snorting" [*Id*. at 5].

Defendants fail to show by a preponderance of the evidence that these statements are false. Detective Holmes's body camera video shows that the female was bent over and facing away from him as he approached the Ford Focus. The female later tells Detective Holmes that she was about to snort drugs in the parking lot, and Detective Holmes says that is what he thought she was doing based on her movements. Finally, another officer on the scene later tells Detective Holmes to be careful when handling the female's cell phone because it has drug residue on the surface. This evidence preponderates against a finding that the two statements are false.

Moreover, even if the female was preparing heroin for snorting on her phone while it was on the passenger seat rather than in her lap, such is not material to probable cause. The affiant states that officers witnessed an individual drive from the residence, conduct a suspected drug transaction with the female, and immediately return to the residence. And he relates that law enforcement seized a baggie of suspected heroin from the car of the female involved in the transaction. The affiant states that the female identified an individual linked to the residence as her heroin supplier. Hence, the information regarding the March 7, 2023 drug transaction carries the same import without either of the statements relating to the female's attempted use of the drugs as law enforcement approached her vehicle.

### D. Rental Car Records

At the September 17 hearing, Defendant Price introduced two sets of rental car records, a spreadsheet created by Avis documenting rentals by both Kenneth Roberts and Defendant Walker [Exh. 3] and records produced by Avis pursuant to a subpoena for rental records between February 1 and March 3, 2023, related to the rentals of three vehicles [Exh. 4]. Defendant argued

26

that these records show the affidavit's information that Defendant Walker rented vehicles spotted at the residence is false, because the spreadsheet was created after the affidavit and the subpoenaed records only mention Kenneth Roberts as renting vehicles. Defendant argued that Detective Neely phrased the information in the affidavit to make it stronger that it was to get the search warrant.

The undersigned continues to find that "only the information that Defendant Walker's vehicle rentals occurred *in Knoxville* is false" [Doc. 66 p. 16]. Although the subpoenaed documents [Exh. 4] only discuss Kenneth Walker renting vehicles, Detective Neely testified that he obtained additional information on the rentals from Avis by telephone. Defense counsel dismisses this testimony because the affidavit says the information is from subpoenaed records. But the fact that Defendant Walker rented vehicles in January and February 2023, including the Toyota Highlander involved in the March 7, 2023, transaction is corroborated by the spreadsheet prepared by Avis [Exh. 3; Doc. 66 p. 15 ("[T]he affidavit contains the accurate make, model, and license plate number of the Toyota Highlander rented by Defendant Walker in Michigan and returned in Knoxville[.]"). The undersigned also continues to find "that Defendant Walker rented vehicles from the Avis in Michigan, rather than the Avis in Knoxville, has little, if any, bearing upon probable cause given that rental vehicles were constantly at the residence and Defendant Walker rented some of them" [Doc. 66 p. 16].

III.     **CONCLUSION**

For the reasons discussed herein, the undersigned finds that:

1.   the affidavit's statement that the female driver of the Ford Focus admitted that she purchased heroin from Kenneth Roberts is not false, and the identity of the driver of the Toyota Highlander is not material to probable cause;

2.   the statement that the female driver admitted her car contained heroin before the K-9 alert is false but only as to the timing of the admission, which occurred after, not before the dog alert, and this

27

false statement of the timing of the admission is not material to probable cause;

3. the affidavit's statements that officers observed the female driver preparing to use drugs as they approached her vehicle are not false, nor are they material to probable cause;

4. the affidavit's statement that Defendant Walker rented vehicles from Avis in Knoxville is false only as to the location at which he rented vehicles and the location of rental is not material to probable cause; and

5. omitting both the timing of the female's admission that her car contained heroin and the location from which Defendant Walker rented vehicles does not affect probable cause.

The undersigned therefore **RECOMMENDS**[10] that the District Judge again **DENY** Defendant's motions to suppress evidence [**Docs. 36 & 52**].

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[10]    Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).

28